[No. D062114. Fourth Dist., Div. One. Sept. 12, 2012.]

A.A., Petitioner, v.
THE SUPERIOR COURT OF SAN DIEGO COUNTY, Respondent;
SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY,
Real Party in Interest.

## COUNSEL

Valerie N. Lankford, under appointment by the Court of Appeal, for Petitioner.

Thomas E. Montgomery, County Counsel, John E. Philips, Chief Deputy County Counsel, and Caitlin E. Rae, Deputy County Counsel, for Real Party in Interest.

Jamie A. Moran, under appointment by the Court of Appeal, for Minors.

## OPINION

**HUFFMAN, Acting P. J.**—A.A. seeks writ review of a juvenile court order denying her reunification services as to her minor, D.A., and setting a hearing under Welfare and Institutions Code section 366.26.[1] She contends the court erred in denying reunification services under the bypass provisions of section 361.5, subdivision (b)(15). We will find that section does not apply to the circumstances of this case and grant the requested relief.

### FACTUAL AND PROCEDURAL BACKGROUND

A.A. is the mother of two children, D.D., Jr., age four, and D.A., age 11 months. In January 2010, the San Diego County Health and Human Services Agency (Agency) filed a petition under section 300, subdivision (b) with regard to D.D., Jr. A.A. was provided with 18 months of reunification services and on July 20, 2011, D.D., Jr., was placed with A.A. with a plan of family maintenance.

D.A. was born shortly after the July 2011 hearing. Following D.A.'s birth, A.A. was out of services due to medical complications and lack of child care. In September 2011, A.A. spoke with social worker Yvonne Munoz and a monthly compliance meeting was scheduled for September 20, 2011, however, Munoz was unable to attend the meeting.

---

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise specified.

Munoz learned that on September 23, 2011, A.A. was seen in the company of D.D., Sr., in violation of a restraining order. Apparently A.A. moved out of her apartment following that incident and remained out of contact with the Agency. On October 5, 2011, Munoz reported D.D., Jr., as an "abducted child."

On December 2, 2011, A.A. contacted Munoz for help in reinstating her CalWORKs (California Work Opportunity and Responsibility to Kids) and Medi-Cal benefits. A.A. advised Munoz that she had moved to Arizona to live with an aunt because she had been required to leave her apartment and had difficulty with work and child care. A.A. admitted she knew she was required to check in with the social worker each month. Munoz advised her to have the children medically evaluated and to have the information sent to the Agency.[2]

Munoz then contacted Arizona law enforcement to request a welfare check on the children. She also filed a hotline referral with Arizona Child Protective Services (CPS). Munoz was later advised by a Mesa, Arizona, police officer that the children were healthy and that D.D., Jr., was "perfectly fine."

On December 5, 2011, Munoz was informed by an Arizona social worker, Nick Loya, that he had visited the children and everything "[checked] out fine." However Loya said he would substantiate a neglect allegation because A.A. had "absconded" with D.D., Jr.

On December 23, 2011, Munoz attempted to contact A.A. but was unable to do so. She learned that A.A. had moved to Phoenix with a new boyfriend. Munoz contacted Loya and requested that D.D., Jr., be detained.

On December 27, 2011, A.A. left a voice mail message for Munoz that she had moved and the children were fine. A.A. left a phone number but not an address. A.A. left another message on January 9, 2012. Munoz did not receive the messages until January 10, 2012, when she returned to work after the holidays. Munoz spoke to A.A. on January 10, 2012. The following day Loya contacted Munoz to report he had detained the children. He indicated there did not appear to be any safety concerns as A.A. was meeting the children's needs. The children would remain detained pending further investigation.

D.D., Jr., was brought into protective custody in California on January 12, 2012, and a section 387 petition to change placement was filed on his behalf the following day.

---

[2] At the time of the discussion between Munoz and A.A., D.A. was not involved in the dependency system.

D.A. was returned to California on February 29, 2012, and the Agency filed a petition under section 300, subdivision (b) on his behalf.

The section 387 petition regarding D.D., Jr., and the section 300, subdivision (b) petition regarding D.A., were heard together. At the conclusion of the contested jurisdiction hearing, the court sustained both petitions. The court denied further reunification services as to D.D., Jr., and denied reunification services for D.A. The court scheduled a hearing under section 366.26 for both children on October 2, 2012.

A.A. filed a timely notice of intent to file a writ petition and subsequently filed a petition for review under section 366.26, subdivision (*l*) and California Rules of Court, rule 8.452. This court issued an order to show cause and ordered the 366.26 hearing stayed as to D.A. The Agency responded and the parties waived oral argument.

## DISCUSSION

In this writ petition, A.A. challenges only the court's decision to deny her reunification services for D.A. Accordingly, we do not address the court's decision to schedule a 366.26 hearing as to D.D., Jr.

At the disposition hearing, the Agency argued the court should deny A.A. reunification services as to D.A., based on the argument that A.A. had abducted D.D., Jr., from his placement within the meaning of section 361.5, subdivision (b)(15). While the trial court declined to probe the meaning of the terms abduction from placement, as contained in that section, the court decided that A.A.'s action had violated the core of the statutory provisions by leaving California to avoid "compliance with the rules." As we will discuss, when a child is removed from parental custody, the court must provide reunification services unless there is a statutory authorization (often referred to as a bypass provision) which allows the court to deny services and proceed immediately to permanency planning. Section 361.5, subdivision (b)(15) does not apply to the actions of A.A. in moving with D.D., Jr., to Arizona. Accordingly, the trial court erred in failing to grant reunification services as to D.A.

### A. *Legal Principles*

Section 361.5, subdivision (b)(15) provides that reunification services can be denied when a "parent or guardian has on one or more occasions willfully abducted the child or [the] child's sibling or half sibling from his or her placement and refused to disclose the child's or child's sibling's or half sibling's whereabouts, refused to return physical custody of the child or

child's sibling or half sibling to his or her placement, or refused to return physical custody of the child or child's sibling or half sibling to the social worker."

Thus the question we must decide is whether there is substantial evidence to support a finding that the parent (1) abducted the child from its placement; (2) refused to disclose the whereabouts of the child; and/or (3) refused to return the child to its placement or to the social worker. For our analytical purposes we are called upon to consider whether A.A.'s actions in taking D.D., Jr., to Arizona amount to violation of one of the provisions of this section.

■ In determining the scope of a statute we look to the language of the statute. " '[I]f the statutory language is not ambiguous, then we presume the Legislature meant what it said, and the plain meaning of language governs.' " (*In re Austin P.* (2004) 118 Cal.App.4th 1124, 1129 [13 Cal.Rptr.3d 616].) " 'Appellate courts may not rewrite unambiguous statutes' " or "rewrite the clear language of [a] statute to broaden the statute's application." (*In re David* (2012) 202 Cal.App.4th 675, 682 [135 Cal.Rptr.3d 855]; see *In re B.L.* (2012) 204 Cal.App.4th 1111, 1116 [139 Cal.Rptr.3d 525].)

■ Finally, when a child is removed from parental custody, reasonable reunification services must be provided to the parent, unless one of the exceptions in section 361.5, subdivision (b) applies. (*In re Jesse W.* (2007) 157 Cal.App.4th 49, 59 [68 Cal.Rptr.3d 435].)

Where the court makes factual findings that a bypass section applies, we review those factual findings under the substantial evidence standard. (*In re B.D.* (2008) 159 Cal.App.4th 1218, 1232 [72 Cal.Rptr.3d 153].) We do not reweigh the evidence or make credibility determinations. We review the entire record in the light most favorable to the trial court's findings to determine if there is substantial evidence in the record to support those findings. (*In re Baby Boy L.* (1994) 24 Cal.App.4th 596, 610 [29 Cal.Rptr.2d 654].) Interpretations of statutes, however, are independently reviewed on appeal as questions of law. (*In re Lana S.* (2012) 207 Cal.App.4th 94, 108 [142 Cal.Rptr.3d 792]; *Renee J. v. Superior Court* (2001) 26 Cal.4th 735, 743 [110 Cal.Rptr.2d 828, 28 P.3d 876].)

### B. *Analysis*

The Agency argued that A.A.'s conduct in removing D.D., Jr., to Arizona amounted to an "abduction from placement" or a "refusal to disclose the location of the child." In its ruling the court found the statute ambiguous, but

curiously declined to parse the meaning of such terms as placement or abduction, since this is not a "criminal statute." The court said, in part:

"Now, the statute, which is subdivision (b)(15) of section 361.5, states that, if a parent has willfully abducted a child from his or her placement, 'abduct' means to take away by illegal force or fraud, especially referring to women and children. That's in the Oxford English Dictionary. The placement at that time was with Mother, and I do not believe the order for placement designates an address or a place.

"So were we to look at this statute and construe it under the facts of this case, it is ambiguous. Does placement mean in California, or with the mom, wherever she goes? Did she abduct the children—the child, [(D.D., Jr.)], through force or fraud? I'm not going to answer those questions, because, first of all, this is not a criminal statute and does not require that sort of detail. But, more importantly, this is precisely the conduct that that statute was meant to address, removing the child from the jurisdiction to avoid the consequences of breaking the rules.

"She did not inform the court of the whereabouts, she did not inform the Agency of the whereabouts. As I said, the purpose of this statute is to prevent or to deny services to someone who's willing to do that, and has done it. I think that, as a core offender of subdivision (b)(15), the fine arguments about what is placement and what is abduction are not available to her.

"In a sense, she's estopped from making those arguments because of the nature of what she did. And I'm not going to construe the statute so finely, knowing that its very purpose is to stop precisely this behavior. Now, the irony is not lost on me that none of you made that argument. Nevertheless, I see my job as a judge to deal with the issues as they present themselves, not just choose the arguments of one or the other counsel.

"So my decision will be that, by clear and convincing evidence, I find that the Mother did remove her son, [(D.D., Jr.)], from the jurisdiction, specifically to avoid consequences of having been seen and, presumably, being with [D.D., Sr.], whom she had a restraining order against and who that was—got lost in that sentence. It was a violation of [D.D., Sr.'s,] probation to have done that, that contact, and it also was a violation of the restraining order."

Neither party has been able to find any case law regarding section 361.5, subdivision (b)(15) and our independent research has not revealed any. Thus, we turn first to the language of the statute. The Agency tells us the statute was passed to deal with abductions of children from their placements. Specifically, it points out that the legislative history reports numerous abductions "primarily from out-of-home placements." (Sen. Rules Com., Off. of

Sen. Floor Analyses, 3d reading analysis of Sen. Bill No. 2091 (1997–1998 Reg. Sess.) as amended Apr. 30, 1998 <http://www.leginfo.ca.gov/pub/97-98/bill/sen/sb_2051-2100/sb_2091_cfa_19980513_175541_sen_floor.html> [as of Sept. 12, 2012].) However, we do not find the statute ambiguous, certainly not as applied to this case.

■ We deal first with the "placement" of D.D., Jr. On July 20, 2011, the juvenile court ordered that D.D., Jr., be "placed" with his mother A.A., following an 18-month reunification period. While the court maintained jurisdiction over the case for family maintenance services, it plainly ordered the child placed with her. Indeed, when the Agency decided to remove D.D., Jr., from A.A. it filed a petition under section 387, alleging the previous "placement" with A.A. had not been successful. It appears clear to us that the term "placement" at least includes the actions of the juvenile court in placing a child with the parent, guardian, foster parent or licensed group home. Whether there is some other nuance of the word placement that could exist is not before us. Thus, we start with the conclusion that at the time of A.A.'s move to Arizona, D.D., Jr., had been "placed" with her. Thus, we find no evidence in this record that she willfully, or otherwise removed him from his "placement" within the meaning of section 361.5, subdivision (b)(15).

We turn next to the word "abduct" which is used in the statute. As the juvenile court observed, ordinarily the term "abduct" refers to a forceful or fraudulent removal of a person, or a child, as in this instance. (Black's Law Dict. (7th ed. 1999) p. 3, col. 2.) As the trial court's comments implicitly recognize, there is no evidence of "abduction" in the present case. The undisputed facts are that A.A. moved with her children to Arizona. There was no court order in place that required her to remain in California. At base, she failed to check in with the social worker each month and provide the worker with her residence information.

We next turn to the question of whether, within the meaning of section 361.5, subdivision (b)(15), A.A. refused to disclose her location or refused to return D.D., Jr., to his "placement" or to the social worker. Again, there is no evidence that A.A. refused to do any of these acts. There is no evidence she was asked to return D.D., Jr. As to location, while A.A. was admittedly erratic, she did provide her location in Mesa, Arizona, and was visited at that location by Mesa police and CPS personnel. Munoz acknowledged that A.A. left messages for her on December 27, 2011, and January 9, 2012. Munoz was able to reach A.A. when Munoz returned to work on January 10, 2012. While it is entirely understandable that Munoz was on leave during the holiday period, the fact she did not reach A.A. until January 10, 2012, was not A.A.'s fault nor does it provide evidence that she was "refusing to disclose her whereabouts" or refusing to return the child.

While the trial court could disbelieve A.A. about the reasons for her actions, in order to bypass reunification services under the subdivision at issue, the court could not properly base its decision on the finding that A.A. left California in order to avoid the consequences of associating with the children's father in violation of a restraining order. A.A. has not challenged the court's true finding on the petition for D.A., and we have no occasion to comment on that true finding. Thus, it may be entirely appropriate to consider A.A.'s conduct in moving and erratically contacting the Agency. Such action may justify making D.A. a dependent of the court. It does not, however, provide any basis to conclude that A.A. "abducted the child . . . from his . . . placement" or "refused to disclose [his] whereabouts" or "refused to return . . . the child . . . to his . . . placement, or . . . the social worker." (§ 361.5, subd. (b)(15).)

At the risk of being redundant, D.D., Jr., was at all times at issue here "placed" with his mother, thus her travel to Arizona, however ill advised, does not amount to abduction from placement. Her erratic contacts with the Agency and her move to different housing, on this record, do not amount to refusal to disclose whereabouts or to return the child.

Accordingly, we find the court erred in applying the bypass provisions of section 361.5, subdivision (b)(15) to the case of D.A. Therefore we will grant the relief requested and direct the juvenile court to vacate its order setting D.A.'s case for a section 366.26 hearing and to provide A.A. with reasonable reunification services as to D.A.

## DISPOSITION

Let a writ of mandate issue directing the juvenile court to vacate its finding and order denying A.A. reunification services as to D.A. and setting a section 366.26 selection and implementation hearing, and to enter a new order granting A.A. reasonable reunification services as to D.A. The stay issued August 22, 2012, is vacated. This opinion is final immediately as to this court. (Cal. Rules of Court, rule 8.490(b)(3).)

McDonald, J., and Irion, J., concurred.