Filed 3/20/13  E.M. v. Super. Ct. CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

|  |  |
|---|---|
| E. M., <br><br>     Petitioner, <br><br> v. <br><br> SUPERIOR COURT OF CONTRA COSTA COUNTY, <br><br>     Respondent, <br><br> CONTRA COSTA COUNTY CHILDREN AND FAMILY SERVICES BUREAU et al. <br><br>     Real Parties in Interest. | A137259 <br><br> (Contra Costa County Super. Ct. No. J11-01732) |

E.M. (Mother) challenges dispositional orders entered November 27, 2011, in which the juvenile court set a hearing under Welfare and Institutions Code section 366.26[1] to select a permanent plan for R.F. (born December 2011).  Mother claims the court erroneously denied her reunification services pursuant to section 361.5, subdivision (b)(5) and (b)(6), and failed to comply with the requirements of the Indian Child Welfare Act (ICWA).[2]  We deny the petition.

### BACKGROUND

The Contra Costa County Children and Family Services Bureau (Bureau) filed a petition under section 300, on December 27, 2011—four days after R.F.'s initial

---

[1]  All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

[2]  Title 25 United States Code section 1901 et seq.

1

detention. Allegations under section 300, subdivision (e), stated R.F. had sustained severe physical injury while in the sole custody and care of his parents, during the period following his birth through the date of initial detention, in that he had suffered a non-accidental skull fracture, a non-accidental rib fracture, wounds on his face and hand that appeared to be the result of burns, and multiple non-accidental human bite wounds on his body (allegations (e)(1) through (e)(4)). Additional allegations, under section 300, subdivision (i), were stated in three sets. That is, R.F. was subjected to cruelty in that he suffered the above-alleged injuries while in the sole custody and care of Mother (allegations (i)(1) through (i)(4)), while in the sole custody and care of J.F. (Father) (allegations (i)(5) through (i)(8), and while in the sole custody and care of both parents (allegations (i)(9) through (i)(12)).

The juvenile court formally detained R.F. on December 28, 2011. A significant delay ensued before commencement of the jurisdictional hearing, largely to accomplish the extensive investigation and discovery relating to the foregoing allegations of serious physical abuse and cruelty. Some nine months later, on September 21 and 27, 2012, the juvenile court entered jurisdictional orders in which it dismissed the allegations of cruelty inflicted solely by Father (allegations (i)(5) through (i)(8)), but sustained as true all the remaining allegations. In doing so, the court commented it was clear Mother was the perpetrator. "[Mother] did this[, a]bsolutely."

At the conclusion of the dispositional hearing, on November 27, 2012, the juvenile court denied reunification services to Mother under section 361.5, subdivision (b)(5) and (b)(6), and denied services to Father under section 361.5, subdivision (b)(5).

Mother's petition followed. (§ 366.26, subd. (*l*).)

**DISCUSSION**

## I. *Bypass of Reunification Services*

### A. *Under Section 361.5, subdivision (b)(5)*

At disposition a juvenile court may deny reunification services to a parent when, as here, it finds by clear and convincing evidence the child was brought within section 300, subdivision (e), because of the conduct of that parent. (§ 361.5, subd.

2

(b)(5).)  After making such a finding, the court is required to deny services to that parent unless, among other alternatives, it finds "based on competent testimony, those services are likely to prevent reabuse."  (§ 361.5, subd. (c).)

Mother contends the juvenile court erred denying services under section 361.5, subdivision (b)(5), because it failed to find services would be likely to prevent reabuse, pursuant to section 361.5, subdivision (c).  She argues she presented evidence showing her "strong motivation" to address the problems leading to R.F.'s removal, as well as evidence that reunification services were likely to prevent reabuse.

Here the court, in denying services to Mother under section 361.5, subdivision (b)(5), essentially found by implication reunification services were *not* likely to prevent reabuse.  We review that finding under the substantial evidence standard.  That is, we do not reweigh the evidence or make credibility determinations, but review the entire record in the light most favorable to the juvenile court's findings to determine if there is substantial evidence in the record to support the finding.  (*A.A. v. Superior Court* (2012) 209 Cal.App.4th 237, 242.)

According to the dispositional report submitted into evidence, Mother asked in October 2012 that she be given a chance to parent R.F., reporting she was currently engaged, on her own initiative, in individual therapy and a parenting group.  Because Mother's counsel, however, had rescinded her consent forms, the assigned social worker (SW) was unable to verify Mother's attendance, participation, or progress.  When the SW asked Mother to describe what she learned in her parenting group, she replied she had learned to "listen" when he asked for help, although R.F., at 10 months of age, was still non-verbal at the time.  Mother was similarly unable to describe concrete steps for soothing a crying infant.  The SW reported Mother had provided conflicting answers throughout the investigation, and had never accepted responsibility for the R.F.'s non-accidental injuries, although, as we have noted, the juvenile court expressly found Mother to be the perpetrator of those injuries when it sustained the jurisdictional allegations set out as (e)(1) through (e)(4), (i)(1) through (i)(4), and (i)(9) through (i)(12).[3]  At that time

---

[3]  Mother has not challenged the sustained jurisdictional allegations.

the court had also found not credible both Mother's denial of responsibility and Father's belated report (in August and October 2012) that he "may" have caused R.F.'s injuries.

At the dispositional hearing, Mother continued to deny any responsibility, blaming Father for R.F.'s injuries, while denying she had any awareness at the time of Father's conduct. While Mother testified she had learned in her parenting group to control her anger "if [she] need[ed] to," she denied having any actual anger control issues.

The SW also testified at the dispositional hearing as a qualified expert in social work. In her opinion, the prognosis of Mother's success in engaging in services, should they be offered, was "poor," based on the severity of the injuries on an extremely young infant, the lack of evidence indicating progress or insight on Mother's part, and Mother's continuing refusal to take responsibility in the face of evidence supporting the juvenile court's express determination that Mother was, in fact, the perpetrator. The SW's contacts with Mother's therapist and parenting group leader further indicated that Mother had not been forthcoming with either, concerning the factual circumstances underlying R.F.'s removal. Thus neither the therapist nor the parenting group leader had been sufficiently apprised of the issues Mother needed to address.

We note finally the juvenile court, at the conclusion of the dispositional hearing, continued to regard Mother as the perpetrator, finding not credible her testimony at that hearing denying responsibility and blaming Father.

This record, in our view, provides substantial support for the juvenile court's implied finding that services to Mother were *not* likely to prevent reabuse on her part, within the meaning of section 361.5, subdivision (c). (See *A.A. v. Superior Court, supra,* 209 Cal.App.4th at p. 242.)

### B. *Under Section 361.5, subdivision (b)(6)*

The juvenile court may additionally deny reunification services to a parent when, as here, it finds by clear and convincing evidence the child was adjudicated a dependent of the court under section 300 due to the "infliction of severe physical harm to the child," and the court finds it "would not benefit the child to pursue reunification services with the *offending* parent." (§ 361.5, subd. (b)(6), italics added.) After making such a finding,

4

the court is similarly required to deny services to that parent, unless it finds by clear and convincing evidence that "reunification is in the best interest of the child." (§ 361.5, subd. (c).) The court in this instance found explicitly that services to Mother would be "detrimental" to R.F.—by implication determining such services were *not* in R.F.'s best interests.

Mother claims the juvenile court improperly denied reunification services to her under section 361.5, subdivision (b)(6). She insists she was "simply negligent" in her failure prevent the injuries to which Father had confessed, thus suggesting she was not the *offending* parent within the meaning of section 361.5, subdivision (b)(6).

This contention lacks merit. The juvenile court clearly found section 361.5, subdivision (b)(6), to be applicable to Mother as the *offending* parent, and rejected as not credible the contrary testimony or reports given by Mother and Father. As we have said, we do not reweigh the evidence or reassess credibility determinations. (*A.A. v. Superior Court, supra,* 209 Cal.App.4th at p. 242.) We conclude, on the other hand, that the evidence summarized above provides substantial support for the court's implicit determination that services to Mother would *not* be in R.F.'s best interests within the meaning of section 361.5, subdivision (c).

## II. *ICWA Requirements*

The notice, other procedural requirements, and substantive requirements of ICWA (25 U.S.C. § 1901 et seq.) are codified by state statutes and rules. (See Welf. & Inst. Code, §§ 224-224.6; California Rules of Court, rules 5.480–5.487.[4] Early in this proceeding, Mother indicated R.F. might be an Indian child subject to these provisions, in that she might have Indian ancestors belonging to the San Carlos Apache tribe.

Mother urges the juvenile court erred in failing to make necessary findings regarding ICWA at the dispositional hearing, and improperly referred those issues to a later hearing set in January 2013.

These objections are not supported by the record. Exhibits submitted at the dispositional hearing show that the Bureau completed JC form ICWA-030, which set out

---

[4] All further rule references are to the California Rules of Court.

all the information Mother initially provided on December 23, 2011. The Bureau's form ICWA-030 also included *all* additional information that Mother subsequently submitted to the Bureau in February 2012.[5] The Bureau's form ICWA-030 was sent properly by certified mail to the BIA, the San Carlos Apache tribe, and seven other Apache tribes. Response from each of the notified tribes, including the San Carlos Apache tribe, indicated R.F. was not eligible for tribal membership.

Based on these exhibits, the juvenile court found the Bureau had properly complied with the notice requirements of ICWA, and also found R.F. was not an Indian child. Nevertheless, the court commented that such findings were always subject to further information, and indicated such issues could be addressed at another time. It was only for this reason that the court—out of an abundance of caution—commented that "any further ICWA issues" might be considered at the placement hearing it had set for January 2013.

On this record, we find no noncompliance with the notice provisions of ICWA at the time of the dispositional orders.

We note finally Mother's reliance on rule 5.481, for the proposition that the juvenile court was required to apply the provisions of ICWA in this proceeding because of her indication that R.F. *might* be an Indian child. From this, she suggests the court erred in making dispositional orders that failed to apply *substantive* provisions of ICWA—which apply to an Indian child when determining matters such as foster care placement, termination of parental rights, and the provision of remedial services to prevent the breakup of an Indian family. Rule 5.481, however, applies only to compliance with the *inquiry* and *notice* provisions of ICWA. The juvenile court was not

---

[5] Mother's additional information was provided on a second form ICWA-030, which she submitted to the Bureau, and which the Bureau mailed to the Bureau of Indian Affairs (BIA) sometime after September 25, 2012. Mother's objection appears to be based, in part, on the SW's report that the BIA had not yet responded to this second form ICWA-030 at the time the dispositional report was completed. Although Mother's counsel argued below that Mother's form ICWA-030 included information that had not been included in the Bureau's initial form ICWA-030, the record indicates otherwise, and we perceive no ICWA error on this ground.

required to apply the substantive provisions of ICWA, where, as here, it found the dependent child was *not* an Indian child.

## DISPOSITION

The request for stay is denied, and the petition for extraordinary writ is denied on the merits.  (See Cal. Const., art. VI, § 14; *Kowis v. Howard* (1992) 3 Cal.4th 888, 894; *Bay Development, Ltd. v. Superior Court* (1990) 50 Cal.3d 1012, 1024.)  The decision is final in this court immediately.  (Rules 8.452(i), 8.490(b)(3).)


_____
Banke, J.


We concur:


_____
Margulies, Acting P. J.


_____
Dondero, J.

7