Filed 5/2/13  S.W. v. Super. Ct. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| S.W., | |
| Petitioner, | E058034 |
| v. | (Super.Ct.No. RIJ114244) |
| THE SUPERIOR COURT OF RIVERSIDE COUNTY, | OPINION |
| Respondent; | |
| RIVERSIDE COUNTY DEPARTMENT OF PUBLIC SOCIAL SERVICES, | |
| Real Party in Interest. | |

ORIGINAL PROCEEDINGS; petition for extraordinary writ.  Jacqueline Jackson, Judge.  Petition denied.

Phillip Malisos for Petitioner.

No appearance for Respondent.

Pamela J. Wall, County Counsel and Anna M. Deckert, Deputy County Counsel, for Real Party in Interest.

1

Petitioner S.W. (mother) asks this court to direct the juvenile court to vacate its order of February 7, 2013, denying her reunification services for her daughter D.W. (child) and setting a hearing under Welfare and Institutions Code, section 366.26[1] at which it will determine whether to terminate mother's parental rights.  Mother contends the juvenile court's order is not supported by substantial evidence.  As discussed below, substantial evidence supports the court's order based on mother's mental disability that makes her incapable of benefitting from reunification services (§ 361.5, subd. (b)(2)).  Given this conclusion, we need not address mother's argument that substantial evidence does not support the court's order based on mother's failure to address the problems that led to the removal of seven previous children (§ 361.5, subd. (b)(11)).  We therefore deny mother's petition.

### FACTS AND PROCEDURE

*Family Maintenance – March to July 2012*

On March 7, 2012, the Riverside County Department of Public Social Services (DPSS) filed a section 300 petition alleging mother's mental health issues and history of failure to regularly take her prescribed medication prevented her from providing regular care to the child.  The petition also alleged mother failed to reunify with seven previous children, has a history of abusing controlled substances, has a criminal history for battery,

---

[1] All section references are to the Welfare and Institutions Code unless otherwise indicated.

2

assault and drug charges, and has a history of engaging in domestic violence with the child's father.[2]

In the detention report filed March 7, 2012, DPSS recommended the juvenile court allow mother to retain custody of the child and to provide her with family maintenance services.  Mother had been staying at a sober living home for the previous few weeks and it was reported that she was not taking her medications and was constantly cussing and screaming at the child and "saying scary things" to her like calling her the anti-Christ and telling people the child needed to be "exercised."

At the detention hearing held on March 8, 2013, the juvenile court detained the child from her father's custody but permitted the child to remain in mother's custody.

In the jurisdiction and disposition report filed April 13, 2012, DPSS recommended the child remain with mother on family maintenance.  At the jurisdiction and disposition hearing held on May 24, 2012, the juvenile court sustained the section 300 petition, granted family maintenance services to mother and denied reunification services to the father.

*Supplemental Petition and Detention – July 2012*

On July 17, 2012, DPSS filed a supplemental dependency petition under section 387, in which it alleged mother was not taking her medications and "may be suffering from delusions and hallucinations."  In the detention report filed on that date, the social worker reported receiving a referral from a person, who did not want to be identified, at

---

[2] The petition included allegations regarding the child's father.  Because father is not a party to this writ petition, he will be mentioned only when necessary for clarity.

3

mother's new sober living home. The referent told the social worker that mother was not taking her medications, was acting crazy and delusional, was making threats to hurt people, and said she was getting messages to kill the child. The child was removed from mother and placed in foster care. At the detention hearing held on July 18, 2012, the juvenile court ordered the child detained.

The jurisdiction/disposition hearing was set for August 13, 2012. In the report prepared for that hearing, DPSS recommended offering mother reunification services. However, mother's counsel asked for a contested jurisdiction hearing on the supplemental petition, which the court then set for September 11. In the addendum report filed for the September 11 hearing, DPSS changed its recommendation, asked the court to deny mother reunification services and set a section 366.26 hearing. The reason for the changed recommendation was that mother was not cooperating in obtaining a medication evaluation. This was important because mother's therapist stated mother could not benefit from reunification services until she first addressed her mental health issues. Mother's mental health had deteriorated since the previous hearing, but mother was not cooperating in efforts to stabilize her mental health.

On September 11, 2012, the juvenile court ordered mother to participate in two psychological evaluations. The hearing was continued to October 24.

Mother participated in two psychological evaluations, both on October 1, 2012. Edward J. Ryan, Ph.D., prepared a report dated October 9, 2012. Dr. Ryan reported that mother cooperated only minimally with the evaluation process, and that she presented as paranoid and delusional, with poor insight and judgment. Mother told Dr. Ryan she was

4

not taking any medications. The evaluation showed that mother functions "in the borderline range of intelligence," that is, about in the bottom 10 percent, which would limit, but not completely rule out, her ability to benefit from services. Dr. Ryan concluded: "It is my opinion that the level of pathology of her mental health issues is such as to preclude any possibility of her benefitting from reunification services."

Robert L. Suiter, Ph.D., Psy.D., filed a report consistent with that of Dr. Ryan. During the evaluation, mother stated that she was not taking any psychotropic medications. Mother was "minimally cooperative" and her insight and judgment were poor. Mother displayed overt paranoia. Dr. Suiter administered to mother a personality test, known as Minnesota Multiphasic Personality Inventory-2 (MMPI-2). Mother asked many questions during the test and took a very long time to complete it, but left about 20 percent of the questions unanswered, which made the test results unusable. Based on his interview with mother, Dr. Suiter determined that mother was paranoid, delusional and confused, with no insight into her mental illness or the reasons the child and previous children had been removed from her care. Dr. Suiter opined that there was no reasonable likelihood that mother could benefit from services in the next 6 to 12 months "given the nature of her mental disorder, her lack of insight and her resistance to treatment."

On October 24, 2012, the juvenile court continued the hearing to November 28 because mother's counsel had just received the two psychological evaluations and needed time to review them. On November 28, the court continued the hearing to January 9, 2013, because extensive testimony was anticipated and the court was engaged in trial on another matter. On January 9, 2013, the hearing was continued to February 7.

The contested jurisdiction and disposition hearing was finally held on February 7, 2013. Mother did not contest jurisdiction, so the juvenile court found true the allegation in the petition and declared the child to be a dependent child under the amended petition.

The court heard first from Dr. Ryan, who administered a psychological evaluation to mother on October 1, 2012 to determine whether she would benefit from reunification services. Dr. Ryan testified that mother completed all tests that he administered to her, but that she was "resistive." He concluded that the possibility of mother becoming and remaining compliant with her medication was "remote."

Dr. Suiter testified that he conducted a psychological evaluation of mother, also on October 1, 2012, to determine whether she would benefit from reunification services. Dr. Suiter administered a test to mother, but could not score it because mother did not complete the threshold number of questions. Dr. Suiter interviewed mother and determined that she was "overtly psychotic" and "absolutely out of touch with reality" and displayed "paranoid delusions" and "considerable confusion." In addition, mother was "unwilling to acknowledge that she had any type of mental disorder" or needed medication. Based on this, Dr. Suiter opined that mother "couldn't possibly benefit from services," although she could benefit from psychotropic medications. Dr. Suiter expressed under cross-examination that, although mother could possibly benefit from reunification services if she were forced to take medications, he had concerns about her "long-term compliance" with medications.

After hearing argument from the parties, the juvenile court denied reunification services based on subdivisions (b)(2)[3] and (b)(11)[4] and set the section 366.26 hearing for June 10, 2013.  That same day, mother filed her Notice of Intent to File Writ Petition.

## DISCUSSION

Mother contends the juvenile court's order denying her reunification services and setting the section 366.26 hearing is not supported by substantial evidence under either the mental illness provisions of section 361.5, subdivision (b)(2), or the removal of a sibling provisions of section 361.5, subdivision (b)(11).  As discussed below, substantial evidence supports the court's conclusion that mother's mental illness renders her incapable of benefitting from reunification services, and on this basis we affirm the court's orders.

Section 361.5, subdivision (b)(2) provides that reunification services need not be provided to a parent when the court finds, by clear and convincing evidence, that the parent is suffering from a mental disability that renders him incapable of utilizing those services .  Section 361.5 reflects the Legislature's recognition that "it may be fruitless to provide reunification services under certain circumstances."  (*In re Rebecca H.* (1991)

---

[3]  Section 361.5, subdivision (b)(2), provides that reunification services need not be offered to a parent if "the parent . . . is suffering from a mental disability . . . that renders him or her incapable of utilizing those services."

[4]  Section 361.5, subdivision (b)(11), provides that reunification services need not be offered to a parent if "the parental rights of a parent over any sibling of the child had been permanently severed, and this parent is the same parent . . . and that, according to the findings of the court, has not subsequently made a reasonable effort to treat the problems that led to the removal of the sibling or half sibling of that child from the parent."

7

227 Cal.App.3d 825, 837.) A trial court's order denying reunification services is reviewed for substantial evidence. (*A.A. v. Superior Court* (2012) 209 Cal.App.4th 237, 242.)

Here, Dr. Ryan stated in his report that mother's mental health issues would prevent her from benefitting from reunification services. Further, he testified at the disposition hearing that, although mother could benefit from medication, the probability of her becoming compliant and staying compliant is "remote." Dr. Suiter specifically stated in his report that the nature of mother's mental illness precluded her from being able to benefit from any reunification services based on her "mental disorder, her lack of insight and her resistance to treatment." Further, he testified at the disposition hearing that mother could not possibly benefit from reunification services because of her mental condition and because of her unwillingness to both acknowledge her mental condition and take medication to address the condition. Both Dr. Suiter and Dr. Ryan concluded that mother's mental disorder rendered her utterly incapable of benefitting from reunification services.

Mother argues that the psychological evaluation conducted by Dr. Suiter cannot not be considered substantial evidence supporting the juvenile court's orders because mother did not complete the single test she was asked to complete. However, mother provides no legal authority for her conclusion that this invalidates Dr. Suiter's conclusions. Based on Dr. Suiter's observations of mother's behavior during the test and during his interview with her, we find both his conclusion that mother was overtly psychotic and the juvenile court's reliance on this conclusion to be reasonable.

8

Finally, mother points to the testimony of both experts that mother could possibly benefit from reunification services if she were to take her medication. However, Dr. Ryan made clear that the possibility of mother complying and remaining compliant was "remote." Dr. Suiter also made it clear that, without medication, mother "could not benefit from services" and that there was "no likelihood . . . that she would voluntarily take medication." Thus, the court properly denied father reunification services under section 361.5, subdivision (b)(2), and we need not address mother's arguments regarding subdivision (b)(11).

### DISPOSITION

The petition is denied. The juvenile court's orders are affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ
P. J.


We concur:

RICHLI
J.

MILLER
J.

9