Filed 6/26/13  Evan A. v. Super. Ct. CA5

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| EVAN A., <br><br> Petitioner, <br><br> v. <br><br> THE SUPERIOR COURT OF STANISLAUS COUNTY, <br><br> Respondent; <br><br> STANISLAUS COUNTY COMMUNITY SERVICES AGENCY, <br><br> Real Party in Interest. | F067039 <br><br> (Super. Ct. Nos. 516358 & 516379) <br><br><br> **O P I N I O N** |

### THE COURT[*]

ORIGINAL PROCEEDINGS; petition for extraordinary writ review.  Ann Q. Ameral, Judge.

Nadine Salim for Petitioner.

No appearance for Respondent.

John P. Doering, County Counsel, and Robin Gozzo, Deputy County Counsel, for Real Party in Interest.

-ooOoo-

---

[*] Before Cornell, Acting P.J., Gomes, J., and Peña, J.

Evan A. seeks extraordinary writ review from the juvenile court's orders issued at a contested six-month review hearing (Welf. & Inst. Code, § 366.21, subd. (e))[1], terminating his reunification services and setting a section 366.26 hearing as to his two-year-old daughter, Evangeline, and nine-month-old son, Patrick. (Cal. Rules of Court, rule 8.452.) Evan contends he regularly participated and made substantial progress in his reunification services. Therefore, he further contends, the juvenile court should have continued his services rather than terminate them. We conclude substantial evidence supports the juvenile court's order terminating Evan's reunification services and deny the petition.

## PROCEDURAL AND FACTUAL SUMMARY

Evan and R.H. (mother)[2] are the parents of Evangeline and Patrick, the subjects of this writ petition. Mother also has a four-year-old daughter, Maddison.

Evan and mother have histories of drug abuse. Evan has an extensive criminal history involving use, possession and sale of drugs, burglary, and parole and probation violations. His drug of choice is methamphetamine.

These dependency proceedings were initiated in July 2012 when the Stanislaus County Community Services Agency (agency) took then three-year-old Maddison and 18-month-old Evangeline into protective custody after family maintenance services proved ineffective. At the time, mother was pregnant with Patrick and Evan was in violation of his parole. The agency placed Maddison and Evangeline with their maternal grandmother.

In July 2012, the agency filed a dependency petition seeking Maddison and Evangeline's removal. That same month, the juvenile court ordered them detained. Evan

---

[1] All further statutory references are to the Welfare and Institutions Code.

[2] Mother did not file a writ petition.

and mother appeared at the detention hearing and were appointed counsel. The juvenile court set a jurisdictional/dispositional hearing for late August 2012.

Meanwhile, mother was referred for residential drug treatment but declined. In early August 2012, she gave birth to Patrick at 34 weeks' gestation. The agency took him into protective custody at the hospital and filed a dependency petition on his behalf. The juvenile court ordered him detained and set his jurisdictional/dispositional hearing to coincide with that of his siblings.

In August 2012, Evan and mother entered drug treatment. She entered Nirvana Women of Hope (Nirvana), an inpatient drug treatment facility. Evan entered residential drug treatment at Seventh Step Foundation, Inc. (Seventh Step) as a requirement of his parole.

The jurisdictional/dispositional hearing was continued and conducted in September 2012. The juvenile court exercised its dependency jurisdiction and ordered reunification services, which for Evan included counseling, a domestic violence assessment, inpatient substance abuse treatment, and random drug testing. The juvenile court set the six-month review hearing for March 2013 and advised Evan and mother that it could terminate their reunification services at that time if they did not make significant progress.

In early November 2012, Evan relapsed and was discharged from Seventh Step. He did not contact the agency after his discharge. He appeared, however, at the hospital in December where mother was being treated for a bacterial infection. According to her primary counselor, who was present in the room, Evan appeared to be under the influence. The counselor told mother she was not allowed to be around Evan and asked him to leave. He did so despite mother's begging him to stay. As a result of this incident as well as prior infractions, mother was discharged from Nirvana.

In early January 2013, mother reentered Nirvana but was discharged again at the end of the month for lying about calling her sponsor. By that time, she and Evan had conceived another child. The staff at Nirvana advised the agency mother's "chance of sustaining long term recovery [was] minimal" because of her dishonesty, lack of motivation to change, and continuing relationship with Evan. Two days before mother was discharged from Nirvana, Evan entered C.U.R.A., Inc., a six-month residential treatment program.

In late February 2013, mother completed a substance abuse assessment and tested positive for methamphetamine. She denied using the drug but a hair follicle test confirmed the result.

In March 2013, the agency filed its report for the six-month review hearing and recommended the juvenile court terminate Evan and mother's reunification services because they had not fully addressed the issues that led to the children's removal from their care.

The juvenile court set a contested hearing in March 2013. The agency submitted a letter from C.U.R.A. stating Evan exhibited "remarkable improvement" and intended to complete their long-term residential program. The staff asked the court to allow Evan to have supervised visits with all three children at the facility.

In March 2013, the juvenile court convened the contested six-month review hearing. County counsel made an offer of proof that the social worker would testify mother began attending individual parenting sessions in mid-March 2013 and Evan was doing well at C.U.R.A. He attended general education studies, process groups and anger management groups, and drug tested with negative results. According to the staff at C.U.R.A., Evan would probably require a full year of treatment at C.U.R.A. The juvenile court accepted the offer of proof.

4

Mother testified she did not complete any component of her reunification plan. She was told she could reenter Nirvana in early April. She intended to maintain her relationship with Evan because she did not believe it was detrimental to her but would leave him if he was unable to maintain sobriety.

Jeffrey Ponce from C.U.R.A. testified Evan was in the 90-day in-custody treatment program through the parole department but Evan wanted to stay longer. He said the average stay was nine months to a year. He said Evan had been in the program approximately two months and after 90 days, Evan could participate in parenting and domestic violence classes. He said Evan was in a very structured program and that the substance abuse treatment component was "[p]retty extensive."

Evan testified he had difficulty maintaining sobriety at Seventh Step because "everybody was using in the program." He relapsed and left the program in November. After he left Seventh Step, a warrant was issued for his arrest. In mid-January 2013, he turned himself into the police and was placed in C.U.R.A. He did not try to get into a program sooner because he was "using."

While at Seventh Step, Evan visited the children weekly. He last saw the children in December. Since he had been in C.U.R.A., he spoke to the children on the telephone four or five times. The owner of C.U.R.A. said she would make visits available for Evan at the facility and he had already begun the process of requesting visits there.

Evan testified his parole ended in December 2013. He planned to finish the 90 days required by parole and extend his treatment another two months. After that, he was willing to look for clean and sober housing where he could have the children stay with him. He was also willing to stay at C.U.R.A. for nine to 12 months, if that was recommended.

5

Evan said he was in a relationship with mother but was not "with her." He wanted her to work on her recovery and attain sobriety so that they could be a family but was willing to discontinue their relationship if she did not succeed.

Evan testified he used "street drugs" on and off for 25 years. He also completed drug treatment at Nirvana in 2010 and Allied Fellowship in 2003, both required by parole. He had not been out of custody for more than a year since 2001 or 2002.

Evan believed the treatment he received at C.U.R.A. was more effective than the treatment he previously received because the program at C.U.R.A. was structured and helped him address his behaviors.

At the conclusion of the hearing, the juvenile court found mother made minimal progress and that Evan's progress was fair. The court further found they did not make substantive progress in resolving the issues that required the children's removal and there was not a substantial probability the children could be returned to their custody with continued services. Consequently, the juvenile court terminated their reunification services and set a section 366.26 hearing. This petition ensued.

### DISCUSSION

Evan contends there is insufficient evidence to support the juvenile court's finding he failed to regularly participate and make substantive progress in his reunification services. Therefore, he further contends, the juvenile court should be ordered to vacate the section 366.26 hearing and order that reunification services continue. We disagree.

Section 366.21, subdivision (e) governs the proceedings at the six-month review hearing. Under subdivision (e), the juvenile court may terminate reunification services and schedule a section 366.26 hearing if, as here, the child was under the age of three at the time of the initial removal and the juvenile court finds by clear and convincing evidence "the parent failed to participate regularly and make substantive progress in a court-ordered treatment plan …." (§ 366.21, subd. (e).)

6

We review the juvenile court's finding Evan failed to regularly participate and make substantive progress in his case plan for substantial evidence. (*Jennifer A. v. Superior Court* (2004) 117 Cal.App.4th 1322, 1341.) In so doing, we do not reweigh the evidence but review the entire record in the light most favorable to the juvenile court's finding to determine if substantial evidence supports it. (*A.A. v. Superior Court* (2012) 209 Cal.App.4th 237, 242.)

Here, the juvenile court found Evan made "fair" progress in his court-ordered reunification plan. Evan contends the finding is error because the juvenile court improperly focused on his relapse rather than his progress in "internalizing his sobriety." In essence, Evan asks this court to reweigh the evidence. However, as stated above, that is not our role. Rather, our role is to determine whether substantial evidence supports the juvenile court's finding. In this case, we conclude that it does.

Evan had six months to demonstrate progress in his services plan of which drug treatment was a chief component. However, approximately six weeks into the reunification period, he relapsed. He subsequently evaded the authorities for two and a half months all the while continuing to use drugs. According to the record, this was Evan's pattern which he repeated several times in the previous 11 to 12 years. Given Evan's extensive drug history and pattern of relapse, it is little wonder the juvenile court found he made fair progress despite having completed two months of drug treatment.

We affirm the juvenile court's finding Evan failed to make substantive progress in his court-ordered services. We also affirm its orders terminating his reunification services and setting a section 366.26 hearing and deny the petition.

## DISPOSITION

The petition for extraordinary writ is denied. This opinion is final forthwith as to this court.

7