Filed 6/28/13 T.H. v. Superior Court CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| T.H.,<br><br>          Petitioner,<br><br>v.<br><br>THE SUPERIOR COURT OF CONTRA COSTA COUNTY,<br><br>          Respondent;<br><br>CONTRA COSTA COUNTY CHILDREN AND FAMILY SERVICES BUREAU, et al.,<br><br>          Real Parties in Interest. | A138388<br><br>(Contra Costa County<br>Super. Ct. No. J1201639) |

T.H. (Mother), the mother of M.H. (Minor), petitions for extraordinary relief under California Rules of Court, rule 8.452, asking us to set aside the juvenile court's order setting a permanent plan hearing pursuant to Welfare and Institutions Code[1] section 366.26 (.26 hearing). We shall grant the petition.

## I. BACKGROUND

### A. The Petition as to Minor

A juvenile dependency petition was filed on behalf of Minor on December 4, 2012, a few days after she was born. (§ 300.) The petition alleged that Mother had tested positive for cocaine in February, March, and April 2012 and that she had been a no-show

_____

[1] All statutory references are to the Welfare and Institutions Code. All rule references are to the California Rules of Court.

1

for several other drug test dates; that Mother had been involved with San Francisco County Children and Family Services due to substance abuse and that she had failed to reunify with Minor's sibling and half-sibling because of her substance abuse problem; that parental rights were terminated as to the half-sibling and guardianship established for the sibling in 2009; and that Mother's reunification services for Minor's two other half-siblings were terminated on November 27, 2012, due to Mother's substance abuse. Minor had been detained.

According to the detention/jurisdiction report, Mother had admitted to substance abuse and tested positive for cocaine in March 2012. She tested negative in May and June of the same year, and again tested negative on the day Minor was born. Minor also tested negative for drugs at birth. Minor was born at full term, had no medical problems, and had good Apgar scores. Mother reported that she was participating regularly in outpatient treatment and was willing to enroll in inpatient treatment if it would improve her chances to reunify with Minor.

**B.     Prior Child Welfare History**

The detention/jurisdiction report discussed Mother's prior child welfare history. A petition had been filed in San Francisco County on behalf of Mother's then one-year-old child, J.A., in 2006 alleging neglect, no provision for support, and sibling at risk of abuse. Around the same time, a petition was also filed on behalf of Mother's then three-year-old child, A.G. Mother was ordered to participate in reunification services. Among the sustained findings were that Mother had a substance abuse problem. In 2007, the children were returned to Mother with family maintenance services. The following year, the children were again detained after Mother failed to follow her family maintenance plan. Services were terminated for Mother in May 2009. J.A. was placed in guardianship, and A.G. was adopted.

In 2011, the Contra Costa County Children and Family Services (the Department) had filed dependency petitions on behalf of Mother's two younger children, D.A. and I.A. As sustained, the petitions as to D.A. and I.A. alleged that Mother had a substance abuse problem that placed them at risk of harm, and that they were at risk of harm because, on

2

more than one occasion, Mother had engaged in domestic violence with the children's father. According to a supplemental petition, Mother had tested positive for cocaine in February, March, and April 2012, and had failed to appear for drug testing on two other dates in March 2012. These allegations were sustained.

In November 2012, two days before Minor was born, the juvenile court ordered termination of Mother's reunification services as to D.A. and I.A. and set a permanency planning hearing. In doing so, the juvenile court found that Mother had not made reasonable efforts to address her problems with either substance abuse or domestic violence.

## C.     Jurisdiction

A contested jurisdictional hearing as to Minor took place in January 2013. A social worker assigned to the case testified that Mother was in a residential treatment program for substance abuse. Since the dependency for Minor began, Mother had been cooperating with the Department. In connection with the prior dependencies, Mother had participated in several substance abuse treatment programs. She had completed two programs during the earlier dependencies, but had failed to complete at least two other programs. During the dependency for D.A. and I.A., while on a family maintenance plan in the spring of 2012, Mother relapsed and used powder cocaine.

Mother testified she had not used any illegal substances or alcohol since she learned she was pregnant with Minor in May 2012. At the time, she was in an inpatient program. She received regular prenatal care during the pregnancy. When Minor was born, Mother was in an outpatient drug treatment program, and was on the waiting list for a residential program. A social worker advised her that it would be helpful if she entered a residential treatment program, and in December 2012, when Minor was about a week old, she did so. At the time of the January 2013 hearing, Mother was still in the program. She acknowledged that she had "made mistakes in my past . . . around substance abuse and . . . being in domestic violence relationships." Her drug tests in the program had been negative.

A letter from the residential program's coordinator confirmed that Mother was in the program, and that she participated in alcohol and drug education groups, parenting education groups, women's issues groups, relapse prevention groups, individual counseling, and 12-step meetings weekly. A letter from Mother's therapist at the program stated that Mother had been actively participating in weekly one-on-one therapy, had taken advantage of the therapeutic resources available in the program, and was gaining insights into how past trauma had affected her children and her mental health and had contributed to her addiction. The therapy at the program allowed women "to disclose difficult issues relating to substance abuse, domestic violence, mental health/psychiatric diagnosis, medication regiments [*sic*], health concerns, [and] family and legal issues."

The juvenile court sustained the petition.

## D. Disposition

The Department's disposition report discussed Mother's prior child welfare history, much of which was connected with Mother's drug use. In 2008, Mother and her boyfriend J.A. (the father of some of her older children)[2] had been involved in an incident of domestic violence, in which Father beat Mother up and threatened to kill her with a gun. Mother had failed to comply with drug treatment and testing. After I.A. was born in 2011, the Department received a referral indicating that Mother and Father had engaged in domestic violence in the hospital room.

During D.A. and I.A.'s dependency, when they were living with Mother under a family maintenance plan, there was a court order forbidding Mother from letting Father have contact with them. However, D.A. told a social worker Father in fact visited the family home. Mother had maintained that she had no contact with Father during that dependency.[3]

---

[2] J.A. was named as the alleged father of Minor, although Mother was not sure whether he was in fact Minor's father. We shall refer to him herein as Father. He did not appear below, and is not a party to this writ proceeding.

[3] In denying further reunification services as to D.A. and I.A. in November 2012, the juvenile court found it was "abundantly clear" Mother had continued to have contact

4

The report noted that Mother was still in her residential program, was doing well, intended to apply for an extension when she completed the program, and had attended all scheduled visits with Minor.

Based on Mother's failure to reunify with her older children and to establish "personal stability," the Department recommended that no reunification services be offered to Mother and that the matter be set for a .26 hearing.

A contested disposition hearing took place in April 2013. Mother testified that she and Father had a history of domestic violence and that during the dependency case for D.A. and I.A., she was required to participate in services to address that issue. She described the domestic violence as "disputes, arguments, fights, stuff like that." The fights were both physical and verbal. She said that in 2008 or 2006, Father shoved her, and she called the police. On other occasions, Father would slap her or push her around, and would call her names. She said the most recent incident of domestic violence had been "a couple years back, like 2006, 2008." Later, however, she testified that when she was in the hospital the day she gave birth to I.A. in 2011, she and Father argued and she threw jugs of water and cranberry juice across the room, then called for security to remove him. When asked if that was an incident of domestic violence, Mother answered, "Yes, yes, it is verbally."

Mother had attended several classes of a domestic violence program called STAND in 2012, but did not complete the program. She did not attend any classes after October 2012. She denied that Father had had contact with D.A. and I.A. when the order forbidding contact was in effect, except on one occasion when she saw him unexpectedly when visiting one of her two oldest children. During that time, she was in telephone contact with Father, and was also sexually involved with him "once or twice."

Mother expected to complete her residential treatment program in May 2013, and continue with outpatient services. She had entered the residential program at the

---

with the father of D.A. and I.A., and that she had lied to the social worker and the court about whether they were still in contact.

suggestion of the social worker who detained Minor. Domestic violence treatment was not available in her inpatient program, although the topic could come up in some of the group discussions. She had talked to a counselor about going to domestic violence treatment while she was in the inpatient program, but was not allowed to do so. She said she had not used illegal substances since April 2012. She also said she had learned that her relationship with Father was unhealthy and marked by domestic violence.

Mother said she had not been in contact with Father for about a year, and did not plan to resume a relationship with him unless he addressed his own problems through parenting education, drug testing, and an inpatient or outpatient program, and unless he "came through the courts." She ended the relationship because of his drug use and verbal abuse, and recognized that the relationship was unhealthy. She had "placed" a restraining order against him sometime in 2013, and her mother had tried unsuccessfully to serve it on him.

A social worker testified that a report from the dependency as to Mother's two oldest children stated that in July 2008, Father broke through a window, beat Mother up, and threatened to kill her with a gun. An August 12, 2008 detention report stated that there had been ongoing domestic violence between Mother and Father, and that no matter how many times Father left, Mother always let him return.

The juvenile court found Mother had not made a reasonable effort to treat the problems that led to the removal of her older children. The court concluded that Mother's history of domestic violence with Father was one of the issues that had led to the removal, and that Mother had focused on her problems with addiction and substance abuse but was not addressing the "core issues" of domestic violence. The court bypassed reunification services (§ 361.5, subd. (b)(10) & (11)), and set a .26 hearing.

## II. DISCUSSION

When a child is removed from parental custody, the juvenile court generally must order reunification services to help the parent rectify the problems that led to the removal. (*In re Lana S.* (2012) 207 Cal.App.4th 94, 106.) Reunification services may be bypassed, however, if the court finds, by clear and convincing evidence, that one of certain

6

exceptions apply.  (*Ibid*.; § 361.5, subd. (b).)  The court here relied on two of those exceptions, section 361.5, subdivision (b)(10) and (11), under which services may be denied where a parent's reunification services or parental rights to a child's sibling or half-sibling have been terminated, and the court finds the parent "has not subsequently made a reasonable effort to treat the problems that led to removal of the sibling or half sibling of that child from that parent."  (§ 361.5, subd. (b)(10).)

These exceptions " 'recognize[] the problem of recidivism by the parent despite reunification efforts.  Before this subdivision applies, the parent must have had at least one chance to reunify with a different child through the aid of governmental resources and fail to do so.  Experience has shown that with certain parents, as is the case here, the risk of recidivism is a very real concern.  Therefore, when another child of that same parent is adjudged a dependent child, it is not unreasonable to assume reunification efforts will be unsuccessful." (*Renee J. v. Superior Court* (2001) 26 Cal.4th 735, 744–745.)  The "reasonable efforts" requirement does not mean that the parent must have achieved a certain level of progress, but rather means that "lackadaisical or half-hearted efforts would not be deemed adequate."  (*Cheryl P. v. Superior Court* (2006) 139 Cal.App.4th 87, 99 (*Cheryl P.*).)  The court may consider "the *duration, extent and context* of the parent's efforts, as well as any other factors relating to the *quality and quantity* of those efforts, when evaluating the effort for reasonableness.  And while the degree of progress is not the *focus* of the inquiry, a parent's progress, or lack of progress, both in the short and long term, may be considered to the extent it bears on the *reasonableness* of the effort made."  (*R.T. v. Superior Court* (2012) 202 Cal.App.4th 908, 914.)  Thus, "although success alone is not the sole measure of reasonableness, the *measure* of success achieved is properly considered a factor in the juvenile court's determination of whether an effort qualifies as reasonable."  (*Id*. at p. 915.)

We review the juvenile court's order denying reunification services for substantial evidence.  (*A.A. v. Superior Court* (2012) 209 Cal.App.4th 237, 242.)  In doing so, we do not reweigh the evidence, but "review the entire record in the light most favorable to the

7

trial court's findings to determine if there is substantial evidence in the record to support those findings." (*Ibid*.)

Mother contends the evidence does not support the juvenile court's finding that she did not make reasonable efforts to treat the problems that led to the removal of her older children. Mother points out that the petition as to Minor alleges she failed to reunify with her older children because of her substance abuse, but does not mention domestic violence. Therefore, she suggests, the juvenile court should not have considered whether she made reasonable efforts to address that issue, but should have considered only whether her efforts to address her substance abuse were reasonable. The evidence before the court at the time of its ruling, however, showed that domestic violence was one of the issues that led both to the removal of Mother's two oldest children, A.G. and J.A. in 2008, and to the juvenile court's November 2012 decision to terminate reunification services as to D.A. and I.A. We see no basis to conclude the juvenile court could not properly consider domestic violence in deciding whether Mother had made a reasonable effort to treat the problems that led to the removal of her four older children.

The question remains, however, whether substantial evidence supports the juvenile court's ruling. The juvenile court concluded that Mother had not addressed the issue of domestic violence, and in colloquies with counsel, the court agreed that the extent of Mother's progress was taking a few domestic violence classes, expressed concern that she had not found a residential domestic violence program, and stated her testimony showed she was "in denial . . . about the domestic violence." The record as a whole, however, shows greater efforts to treat the problem of domestic violence in Mother's life. Shortly after Minor was born, Mother entered a residential treatment program with a mission to "provide effective family focused services to women and children struggling with generational cycles of alcohol and drug addiction and behavioral health problems." Although the program did not have a formal domestic violence component and Mother had not been allowed to attend an outside domestic violence treatment program while she was in the inpatient program, her program included one-on-one and group therapy in

8

which participants could discuss "difficult issues relating to . . . domestic violence."[4] Mother had actively participated in one-on-one therapy, had participated in mental health groups for trauma and substance abuse, and had "gain[ed] insights into learning how past trauma has affected her children [and] her mental health." She testified she had ended her relationship with Father, and was unambiguous in her testimony that she did not desire a relationship with him and would not consider resuming a relationship in the future unless he worked through the courts and addressed his own substance abuse and parenting issues. Nothing in the record contradicts this testimony. Moreover, Mother testified, she had recently sought a restraining order against Father, although she had not been successful in having it served on him.

In our view, there is insufficient evidence to support a finding that Mother has not made a "reasonable effort" to treat the problem of domestic violence. Mother's efforts, while not comprehensive, cannot be characterized as "lackadaisical or half-hearted." (*Cheryl P.*, *supra*, 139 Cal.App.4th at p. 99.) Accordingly, we must reverse the order denying reunification services.

## III. DISPOSITION

The petition is granted. Let a writ of mandate issue directing the juvenile court to (1) set aside its order denying Mother reunification services and setting a .26 hearing and (2) issue new and different orders that provide for reunification services for Mother. Our decision is final immediately. (Rules 8.452(i) & 8.490(b).)

---

[4] There is no reason to conclude Mother intentionally chose a program without a formal domestic violence component. At the disposition hearing, Minor's counsel noted that Mother had not received any help in finding an appropriate program. Minor's counsel continued, "I actually did not know that there was a residential drug program operating in this county that didn't have some [domestic violence] component, because those usually are so intertwined in our cases." She did not think there were any residential programs dedicated to domestic violence.

9

                                 _____

                                 Rivera, J.

We concur:


_____

Reardon, Acting P.J.


_____

Humes, J.