Filed 11/13/14  D.T. v. Super. Ct. CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| D.T.,<br><br>      Petitioner,<br><br>      v.<br><br>THE SUPERIOR COURT OF THE STATE OF CALIFORNIA FOR THE COUNTY OF LOS ANGELES,<br><br>      Respondent;<br><br>LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>      Real Party in Interest. | B257555<br><br>(Los Angeles County<br> Super. Ct. No. CK94347) |

ORIGINAL PROCEEDING.  Petition for extraordinary writ.  (Cal. Rules of Court, rule 8.452.)  Teresa T. Sullivan, Judge.  Petition granted and remanded.

Law Offices of Alex Iglesias, Steven Shenfeld and Tawni Lara for Petitioner.

No appearance by Respondent.

Richard D. Weiss, County Counsel, Dawyn Harrison, Assistant County Counsel, and Jessica S. Mitchell, Deputy County Counsel, for Real Party in Interest.

Children's Law Center of Los Angeles (CLC2), Charles Aghoian and Debra Bernard for minor child V.T.

Petitioner D.T. (mother) is the mother of V.T., a one-year-old dependent of the juvenile court. After V.T. was declared a dependent, and after mother learned the Los Angeles County Department of Children and Family Services (Department) intended to detain V.T. and her older half siblings who were also dependents of the court, mother left her home with the children and could not be located for several months. While mother and the children were absent, the Department filed a supplemental dependency petition on behalf of all children. After mother and the children were located, the juvenile court sustained the supplemental petition. At the urging of counsel for the children—but against the Department's recommendation—the court denied mother reunification services with respect to V.T. under the bypass provision in Welfare and Institutions Code section 361.5, subdivision (b)(15) (hereafter subdivision (b)(15)), which applies in cases of parent abduction and similar situations.[1] The court scheduled a hearing for the selection and implementation of a permanent plan for V.T. (§ 366.26.)

Mother has filed a writ petition challenging the juvenile court's decision with respect to V.T. (Cal. Rules of Court, rule 8.452.) She claims the juvenile court (1) abused its discretion in denying her request to continue the disposition hearing for a contest, and (2) erred in denying reunification services under the bypass provision in subdivision (b)(15).

We conclude the juvenile court abused its discretion in refusing to continue the disposition hearing for a contest and we remand so the court may conduct such a hearing. In light of our conclusion, we need not, and do not, express an opinion as to whether subdivision (b)(15) would permit the court to deny reunification services in this case. That is a matter to be decided by the juvenile court based on the record presented at the contested hearing.

---

[1]     All statutory references are to the Welfare and Institutions Code.

2

## FACTUAL AND PROCEDURAL BACKGROUND

In September 2012, a little over one year before V.T. was born, the Department filed a dependency petition on behalf of mother's three children, ages five, seven and nine. (These three children will sometimes be referred to collectively as the older children or as V.T.'s half siblings.) The petition was filed after mother drove with the children to a McDonald's restaurant while intoxicated, dropped them off at the play area, proceeded through the "drive thru" and drove into a wall in the drive-thru. A passerby tried to take mother's keys and mother allegedly punched the person in the face. Mother was arrested and found to have a blood alcohol concentration level of 0.20.

Three hours after her arrest, law enforcement received a call about mother's three children, whom she had left in the play area. Mother stated she did not tell law enforcement about the children because she did not want them detained. Mother was convicted of misdemeanor DUI pursuant to a plea agreement, which included dismissal of an additional DUI count and counts of battery and willful cruelty to a child. In connection with her criminal sentence, mother was ordered to complete an alcohol and drug education counseling program, and a Mothers Against Drunk Driving victim impact program, among other things.

In October 2012, the juvenile court sustained a dependency petition based on the allegations described above. The juvenile court released the three children to mother and ordered the Department to provide family preservation services. Mother was ordered to submit to random drug and alcohol testing, complete a parenting program, enroll in individual counseling, and comply with all criminal court orders, including attending Alcoholics Anonymous (AA).

V.T. was born in mother's home in late October 2013. Two days after her birth, mother brought V.T. to the hospital. Initially, mother denied to hospital staff that she had any involvement with the Department, but she later provided the name of a Department social worker. Hospital staff contacted the Department.

After a team decision meeting (TDM), the Department decided to file a dependency petition on V.T.'s behalf, but not to detain her. In late November 2013, the

3

Department filed such a petition, alleging V.T. was at risk because of (1) mother's failure to adequately address chronic and unresolved head lice issues affecting V.T.'s half siblings, and (2) mother's unresolved alcohol abuse issues and her failure to regularly participate in random drug testing and alcohol abuse programming.

At a hearing in late November 2013, the juvenile court ordered that V.T. remain released to mother and that the Department provide mother with family maintenance services and make unannounced home visits. The court also directed that a nurse go to mother's home to assist mother regarding the lice issues and it scheduled a progress hearing for December 2013 to address the status of the lice problem.[2]

A public health nurse and a Department social worker visited mother a few days before the December 2013 hearing. The public health nurse did not observe any lice in the children's hair.

At the December 2013 hearing, the juvenile court set a February 2014 date for adjudication of the petition filed on behalf of V.T., and it directed the Department to file a report addressing the continuing examination of the children to ensure they remained lice-free.

In late January 2014, the Department submitted a combined jurisdiction and disposition report. According to that report, an individual (apparently from a hospital or clinic) contacted the Department earlier that month to express concerns about V.T. because recent chest x-rays were abnormal and mother had repeatedly failed to contact the clinic for follow-up. V.T. was finally seen later that month and was diagnosed with dyspnea (shortness of breath) and respiratory abnormality. She was prescribed albuterol and a nebulizer. At around this time, a public health nurse again examined the children's hair and found no lice.

The Department's report also advised that mother had missed at least 10 of 24 drug tests during the previous year, including two of the three tests that were scheduled

---

**2** At the hearing, the court found "Raul Doe" to be V.T.'s alleged father. His whereabouts have never been determined and he is not involved in this writ proceeding.

4

on dates after the filing of the dependency petition on V.T.'s behalf. The report noted that mother had failed to enroll in counseling, was no longer participating in AA, and had only minimally participated in the programs ordered by the criminal court. The Department recommended that the court declare V.T. a dependent child and offer mother family maintenance services.

In early February 2014, mother pled no contest and the court sustained the allegation that V.T. was at risk because of mother's unresolved alcohol issues and failure to regularly participate in random drug testing and in an alcohol program. The court dismissed the allegation regarding the head lice problems without prejudice.

As for disposition, the juvenile court ordered V.T. placed with mother and directed the Department to provide family maintenance services. The court ordered mother to (1) submit to random or on-demand drug testing every other week, and to complete a full drug rehabilitation program if she tested positive or missed a test, (2) complete individual counseling to address personal responsibility and child safety issues, and (3) comply with all criminal court programs, including attending AA.

In February and March 2014, mother missed all three of the drug tests to which she was required to submit.

In mid-March 2014, a Department social worker attempted to make an unannounced visit to mother's home. A young man drove up and claimed mother and the children were at the store. The social worker left a card and asked the man to have mother contact her.

Six days later, the social worker attempted another unannounced visit. She was met by another young man who walked up with a pit bull and said mother and the children were at the store. The social worker walked up to the door and saw a young man inside, lying on the couch. It was the same man who had greeted the social worker when she attempted to visit six days earlier. The social worker gave that person another business card and told him to advise mother that an emergency TDM would be held at the Department's local office.

5

Two days later, the social worker visited the elementary school of V.T.'s half siblings. A receptionist advised that the children were now attending a different school. The social worker visited that school and was able to meet privately with each of the three children. Two of them reported that mother and all children had moved in with a cousin. One reported that their maternal grandmother had "put them out" because she was upset mother would go out at night and leave the children unattended. At least two of the children were unkempt and were wearing what appeared to be dirty clothing. The social worker observed no marks or bruises on the children.

Four days later, a TDM took place in which mother, two social workers and various relatives participated. At the meeting, mother claimed she had moved, but she refused to provide her new address. A decision was made to request a "warrant consultation" for the children's detention.

A little over a week later, in early April 2014, the juvenile court issued a removal order authorizing the Department to detain all four children. Over the next 10 days, the Department and law enforcement made four attempts to execute the removal order at two different addresses—twice at mother's last known address (the maternal grandmother's home) and twice at an address provided by the two fathers of V.T.'s half siblings. Mother and children were not located. On the last occasion, the maternal grandmother told the Department social worker and two accompanying law enforcement officers that she had not seen mother or the children for some time and did not know their whereabouts.

Five days later, in mid-April 2014, the Department filed a supplemental dependency petition (§ 387) on behalf of all four children. The supplemental petition contained a single count alleging the children were at risk because mother had (1) failed to participate in court-ordered random drug testing and a drug rehabilitation program, and (2) failed to make the children available for Department visits. Accompanying reports reflected that mother and the children were still at large. A day before the filing of the supplemental petition, a Department social worker left a voicemail message for mother, providing her with the date and time for the detention hearing.

Mother and the children did not appear at the detention hearing. The juvenile court issued a protective custody warrant for all four children and an arrest warrant for mother. The court also found a prima facie case for detaining the children. The court directed that the Department detain the children when located and it gave the Department discretion to place V.T.'s half siblings with their respective fathers. The court also ordered that, once the children were detained, mother was to have only monitored visits with them.

In late April 2014, the Department filed a report detailing recent efforts to locate mother and children. The Department learned that the children—who had previously been enrolled in the Palmdale School District—had not attended school since the beginning of the month. They were not enrolled in any schools in the Palmdale School District or in four nearby school districts. According to personnel with the Los Angeles County Department of Public Social Services, mother had been using her electronic benefits transfer (EBT) card at various locations in California, though she appeared to always return to Hemet. A Department social worker recalled that mother had relatives in Hemet.

In early June 2014, the Department submitted a combined jurisdiction and disposition report with respect to the supplemental petition. The whereabouts of mother and children were still unknown, even though the Department had contacted various law enforcement and child welfare agencies, as well as numerous school districts in an effort to locate them. Mother's family had refused to provide information about mother's whereabouts. According to the report, the fathers of V.T.'s half siblings were extremely frightened for their children and the Department was concerned that mother was not addressing V.T.'s respiratory health issues. The Department concluded its report with a recommendation that the court sustain the supplemental petition and order family reunification services.

On June 6 or 7, 2014, a Los Angeles County Sheriff's Department deputy contacted the Department to report that mother and the children were found at the maternal grandmother's home in Palmdale. The sheriff's department located the family

7

after receiving information from the father of one of V.T.'s half siblings, who had been actively searching for his daughter. Mother was arrested and the children were taken into protective custody.

A Department social worker responded to the home in Palmdale. When the children were being transported to the sheriff's station, two of the older children told the social worker that, a few months earlier, a social worker called mother and told her the children were going to be detained. Mother then told the children they were leaving and they went to a relative's home in Hemet, where they stayed with mother's cousin.

The children were disheveled, but appeared healthy, except for V.T. She had a severe diaper rash. She was taken to a hospital and diagnosed with a yeast infection.

The older children were released to their respective fathers, while V.T. was placed in a foster home.

On June 9, 2014, a short hearing took place in the juvenile court.[3] Mother, who was still in custody and had apparently not received notice of the hearing, was not present. Her appointed counsel was present. The court recalled its warrants and approved the current placements of the children, including that of V.T. in foster care. It ordered that mother have only monitored visits with the children at a Department office. In addition, and at the request of counsel for the children who believed maternal relatives had acted "in concert [with mother] with hiding the children," the court ordered that the maternal relatives have no contact with the children.

The court trailed the matter to the next day for arraignment and a progress hearing, and it scheduled a jurisdiction hearing for July 1. The court also directed the Department

---

[3] On the day of the hearing, the Department filed two "Last Minute Information For The Court" forms, reporting about the events leading up to, and including, the detention of the children. In both forms, the social worker checked the box "Information only" and left blank the box for "Change in Recommendation." Thus, the Department was not changing its recommendation from the combined jurisdiction and disposition report that mother should receive reunification services.

to submit a report discussing whether it would be appropriate to terminate jurisdiction over V.T.'s older half siblings with a family law order.

The court convened for another short hearing the following day. Mother was present. She entered a general denial and submitted to detention of the children. The court found a prima facie case for the detention and confirmed its placement orders from the previous day. At the Department's request, the court confirmed that mother was still subject to the previously ordered drug-testing requirement.

The Department submitted an addendum report on the morning of the July 1 jurisdiction hearing. According to the report, V.T.'s half siblings told a Department social worker that they had been living with a cousin in Hemet.

The Department also reported regarding mother's visits with the children. In mid-June, V.T. had a monitored visit with mother. V.T.'s caregiver later contacted the social worker and was very upset because mother had yelled at her in the reception area and had accused her of causing a small scratch on V.T.'s ear. Mother spent most of the visit complaining about V.T.'s care. After a second visit with V.T. and one of the older children, mother spoke to a social worker and accused the Department and the social worker of being responsible for her dependency case remaining open. According to the report, mother took no responsibility for her own actions.

In this addendum report, the Department stated that it was recommending that jurisdiction over V.T.'s half siblings be terminated with family law orders providing that the children's respective fathers be granted sole physical and joint legal custody. Significantly to this proceeding, *the report made no new recommendation regarding V.T.*

The parties appeared for the adjudication on July 1. Mother was present. The court admitted the various reports discussed above, including, over the objection of mother's counsel, the addendum report filed that very same day. Counsel objected on the grounds that it contained a change in recommendation concerning V.T.'s half siblings and was untimely. No witnesses testified.

Before hearing arguments from counsel, mother's counsel stated that she was asking for a contested disposition "based on the last-minute change in recommendation."

9

Counsel added that if the court was not inclined to grant a contested hearing, she would like to call the children to testify but the children were not present. The court did not respond to this request, stating that it wished to proceed with the adjudication.

Counsel for the parties offered their arguments. Counsel for the Department asked the court to sustain the supplemental petition because (1) mother had not drug-tested as required, (2) mother had not made progress in the court-ordered programs, and (3) it "appear[ed] that the mother had been absconding with the children, had abducted them and moved them to Hemet." Counsel for the children offered similar arguments in asking the court to sustain the supplemental petition.

Mother's counsel asked the court to dismiss the supplemental petition. Counsel claimed mother had been complying with the drug-testing requirement until the court issued the protective custody warrants. She also claimed mother had been attending AA consistently and she presented a sign-up sheet in an effort to support that contention, but the court found that the document lacked credibility. Counsel conceded mother had failed to make the children available for Department visits after the court issued the protective custody warrants.

After hearing from counsel, the court sustained the supplemental petition.

The court immediately turned to the disposition, noting that mother's counsel had asked to have the matter set for a contest and asking counsel for the parties to state their positions regarding the request.

Counsel for the Department objected to a continuance. She noted that the matter was "originally set for June 9, 2014." Counsel for the Department did not address the fact that the Department had changed its recommendation regarding the older children *just that morning* with no advance notice to mother. Counsel for one of the older children joined in the Department's argument, claiming the continuance request was just a delaying tactic and asserting that her client "has his rights."

Mother's counsel asserted she was seeking a contest and might want to call all the children to testify. She noted that, until that morning, the Department had consistently recommended that mother receive reunifications services for all four children. Counsel

10

stated she needed more time to prepare for the disposition because of the change in recommendation. She also noted that the Department had not interviewed mother, despite mother's counsel's requests at the last two hearings (on June 9 and 10).

Counsel for the children "strongly object[ed]" to continuing the matter for a contest. She argued that further delay would be detrimental to the children, noting they were doing well in their current placements. The court asked counsel for the children to state her position regarding the fact that the Department's recommendation as noticed for that day was to offer mother reunification services. Counsel avoided the question, turning instead to the merits of the disposition by arguing that mother should be denied reunification services under the bypass provision in subdivision (b)(15).[4]

*This was the first time anyone had invoked the bypass provision in subdivision (b)(15) and suggested it could be used to deny mother reunification services.* Children's counsel then argued that the court should terminate jurisdiction over the older children and issue family law orders. Counsel made no reference to V.T.

Mother's counsel repeated she had received "zero notice." She cited the Department's last minute change in recommendation.

Counsel for the Department noted that at the June 9 hearing, the court had asked the Department to submit a supplemental report addressing the possibility of terminating jurisdiction over the older children with a family law order which, in counsel's view, provided mother with notice. The juvenile court agreed with counsel for the Department that this directive constituted notice. The court summed up: "I've heard your argument and I've made my ruling that notice was provided to the mother June 9th when the Court did order the Department to address termination of jurisdiction on this case."

---

**4** Subdivision (b)(15) provides that a court may deny reunification services if it finds that "the parent or guardian has on one or more occasions willfully abducted the child or child's sibling or half sibling from his or her placement and refused to disclose the child's or child's sibling's or half sibling's whereabouts, refused to return physical custody of the child or child's sibling or half sibling to his or her placement, or refused to return physical custody of the child or child's sibling or half sibling to the social worker."

11

Following that ruling, mother's counsel asked to be heard regarding the disposition. The court asked mother's counsel to address the bypass provision in subdivision (b)(15). The court noted it had evidence of "mother's willful abduction of the children." Counsel for mother noted that even if the court were to find that subdivision (b)(15) is applicable, it should award mother reunification services because doing so would be in the best interests of the children.

Counsel for the children reiterated that she was asking that mother be denied services under subdivision (b)(15).

Counsel for the Department asked the court to terminate jurisdiction over the older children with family law orders. Counsel for the Department stated she was "submitting" with respect to subdivision (b)(15), stating she had not "had the opportunity to consult with the Department in regards to that." She noted that her "initial understanding" was that there was no basis to deny family reunification services to mother and stated she could "consult with the Department to see whether or not they would agree" that mother should be denied services under subdivision (b)(15).

Counsel for the fathers of the older children asked the court to terminate jurisdiction over them and issue family law orders.

The court then proceeded to issue its disposition orders. With respect to the three older children, the court denied reunification services under subdivision (b)(15) and terminated jurisdiction with family law orders as requested. As for V.T., the court denied mother reunifications services under subdivision (b)(15) and it scheduled a hearing for the selection and implementation of a permanent plan for V.T. (§ 366.26.)

Mother filed a writ petition challenging the juvenile court's order setting the section 366.26 hearing for V.T. She claims the juvenile court (1) abused its discretion in denying her request to continue the disposition hearing for a contest, and (2) erred in denying reunification services under the bypass provision in subdivision (b)(15).

Counsel for V.T. opposes the granting of relief, maintaining that both of mother's contentions lack merit. The Department maintains the juvenile court did not abuse its discretion in denying a continuance. However, the Department takes no position with

respect to mother's contention she may not be denied reunification services under subdivision (b)(15).

## DISCUSSION

**The Juvenile Court Abused Its Discretion When It Denied Mother's Request to Continue the Disposition for a Contested Hearing**

We review the juvenile court's ruling on a continuance request for an abuse of discretion.  (*In re Mary B.* (2013) 218 Cal.App.4th 1474, 1481.)  However, as our Supreme Court stated—albeit in a different context—"the trial court's discretion is not unlimited and must be ' "exercised in conformity with the spirit of the law and in a manner to subserve and not to impede or defeat the ends of substantial justice." ' " (*Elston v. City of Turlock* (1985) 38 Cal.3d 227, 233, quoting *Martin v. Cook* (1977) 68 Cal.App.3d 799, 807, superseded by statute on another point as explained in *Tackett v. City of Huntington Beach* (1994) 22 Cal.App.4th 60, 64-65.)

In claiming she was entitled to a continuance, mother cites a statutory provision and a Rule of Court.  The statutory provision is section 358, subdivision (a)(3), which provides:  "If *the social worker* is alleging that subdivision (b) of Section 361.5 is applicable, the court *shall* continue the proceedings for a period not to exceed 30 days.  The social worker shall notify each parent of the content of subdivision (b) of Section 361.5 and shall inform each parent that if the court does not order reunification a permanency planning hearing will be held, and that his or her parental rights may be terminated within the timeframes specified by law."  (Italics added.)

The rule mother cites is substantially similar.  It provides:  "If *petitioner* [the Department] alleges that section 361.5(b) is applicable, the court *must* continue the proceedings not more than 30 calendar days.  The court must order the petitioner to notify each parent or guardian of the contents of section 361.5(b) and must inform each parent that if reunification is not ordered at the disposition hearing, a section 366.26 implementation hearing will be held and parental rights may be terminated."  (Cal. Rules of Court, rule 5.686(b), italics added.)

13

As counsel for V.T. points out , and as mother readily admits , these provisions refer to a situation in which the *Department* claims one of the bypass provisions in section 361, subdivision (b), applies. In this case, the Department did not invoke subdivision (b)(15). Counsel for the children invoked the provision. Therefore, when read literally, section 358, subdivision (a)(3), and California Rules of Court, rule 5.686(b), do not apply.

However, these provisions are rooted in notions of fundamental fairness and due process. They are based on the recognition that a parent, facing the prospect of being denied the opportunity to reunify with a child and having parental rights terminated, is entitled to a meaningful opportunity to present argument. "[P]arenting is a fundamental right the impairment of which requires strict adherence to procedural due process." (*In re Crystal J.* (1993) 12 Cal.App.4th 407, 412.) In juvenile dependency proceedings, as in other proceedings that would deprive an individual of important rights, due process takes the form of the right to notice and an opportunity to be heard. (See *In re Matthew P.* (1999) 71 Cal.App.4th 841, 851.) Moreover, " 'the right to notice and an opportunity to be heard "must be granted at a meaningful time and in a meaningful manner." [Citation.]' " (*In re Crystal J., supra*, 12 Cal.App.4th at p. 412, quoting *Fuentes v. Shevin* (1972) 407 U.S. 67, 80, original brackets.)

There is absolutely no reason why a parent should be given a meaningful opportunity to defend against the Department's recommendation that reunification services should be denied pursuant to one of the bypass provisions in section 361.5, subdivision (b), but should not be given an opportunity to do so when blindsided by such a recommendation coming out of left field from counsel for the children. If anything, the parent in the latter scenario is entitled to more, not less protection. The Department is vested with extensive authority to recommend a parent be denied reunification services in appropriate circumstances. In such case, however, the parent is entitled to notice and an opportunity to prepare to contest the recommendation. While other parties may offer their opinions to the court, nothing in the dependency scheme suggests the important notice requirements can be bypassed when they do.

14

In this case, mother's counsel was essentially ambushed by the children's counsel's invocation of subdivision (b)(15), when none of the children was present in court to consult with counsel. The bypass provision in subdivision (b)(15) is rarely invoked and has been the subject of almost no published case law. (See *A.A. v. Superior Court* (2012) 209 Cal.App.4th 237, 243 ["Neither party has been able to find any case law regarding section 361.5, subdivision (b)(15) and our independent research has not revealed any"].)[5] Indeed, even counsel for the Department did not feel comfortable addressing the propriety of applying subdivision (b)(15), noting that she would need to consult with the Department regarding its potential applicability.

Under these circumstances, it is disconcerting that the Department asserts mother forfeited the right to challenge the juvenile court's decision to deny her continuance request because she supposedly sought a continuance only with respect to the older children. The Department's forfeiture theory is that mother's counsel sought the continuance only because of the Department's change in recommendation, which change concerned only the older children. We find no basis for this argument because, at the time mother's counsel requested the continuance, she did not refer to a change in recommendation concerning V.T. *because the Department never changed its recommendation that mother receive reunification services with respect to V.T.* Moreover, when the argument concerning the continuance request took place, there was no reason for mother not to focus on the Department's change in recommendation because the juvenile court had provided no indication it would consider applying the bypass provision in subdivision (b)(15). In any event, nothing in the record supports the argument that mother's counsel sought a continuance of the disposition hearing only as to

---

**5**     It appears that since *A.A. v. Superior Court, supra*, 209 Cal.App.4th 237, subdivision (b)(15) has been cited—but not analyzed—in only two published decisions. (*In re S.E.* (2013) 217 Cal.App.4th 610, 613; *In re L.J.* (2013) 216 Cal.App.4th 1125, 1131.)

15

V.T.'s siblings; the only fair reading of the record is that counsel sought a continuance to contest disposition as to *all* her children.

In sum, we find counsel for the children inexplicably invited the juvenile court's error in denying the continuance request and summarily denying mother reunification services with respect to V.T.  We find the court abused its discretion in refusing to continue the disposition hearing for a contest and we remand for the juvenile court to conduct such a hearing.  In light of our conclusion, the question whether the juvenile court erred in applying the bypass provision in subdivision (b)(15) is moot and we do not consider it.

## DISPOSITION

The writ petition is granted.  The juvenile court is directed to (1) vacate that portion of its July 1, 2014 disposition order denying reunification services to mother and setting a hearing pursuant to section 366.26 for the selection and implementation of a permanent plan for V.T., and (2) schedule a new date for a contested disposition hearing concerning V.T.

This opinion is final forthwith as to this court.  (Cal. Rules of Court, rule 8.490(b)(2)(A).)

GRIMES, J.

WE CONCUR:


BIGELOW, P. J.



FLIER, J.


16