Filed 10/13/15  Christina S. v. Super. Ct. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| CHRISTINA S. et al., | D068363 |
| Petitioners, | |
| v. | (San Diego County Super. Ct. No. EJ3600C) |
| THE SUPERIOR COURT OF SAN DIEGO COUNTY, | |
| Respondent; | |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY et al., | |
| Real Parties in Interest. | |

PROCEEDINGS in mandate after referral to a Welfare and Institutions Code section 366.26[1] hearing.  Gary M. Bubis, Judge.  Petitions denied; requests for stay denied.

---

[1]     All further statutory references are to the Welfare and Institutions Code.

Dependency Legal Group of San Diego and Amanda J. Gonzales for Petitioner Christina S.

Dependency Legal Group of San Diego and John P. McCurley for Petitioner Roberto C.

No appearance by Respondent.

Thomas E. Montgomery, County Counsel, John E. Philips, Chief Deputy County Counsel, and Dana C. Shoffner, Deputy County Counsel, for Real Party in Interest San Diego County Health and Human Services Agency.

Mother Christina S. and presumed father Roberto C. (together, the parents) seek writ review of the juvenile dependency court's order, made at the jurisdictional and dispositional hearing, denying reunification services and setting a section 366.26 hearing in the case of child A.C.  The parents contend the court erred by denying reunification services (§ 361.5, subd. (b)(10) & (11)).  We deny the petitions and requests for a stay.

PREVIOUS DEPENDENCY CASES

Christina's son, Philip A., was born in April 2003.[2]  Christina and Roberto's daughter, Cecelia S., was born in April 2012 with cerebral palsy and hydrocephalus. Christina admitted using methamphetamine two days before Cecelia's birth.  In May 2012, the San Diego County Health and Human Services Agency (the Agency) opened a voluntary services case for the parents.  The parents participated inconsistently.

---

[2]     Philip's father is deceased.

2

In September 2012, a law enforcement officer stopped the car Roberto was driving after Roberto ran a stop sign. Christina and Cecelia were passengers and Cecelia was not properly restrained in her car seat. The parents appeared to be under the influence of a controlled substance. Roberto had methamphetamine in his pocket. The parents were arrested and charged with child cruelty. Christina was additionally charged with illegal possession of a firearm and theft offenses. Roberto was additionally charged with possessing and being under the influence of a controlled substance. Cecelia and Philip were detained and the Agency filed dependency petitions. Sometime in 2012, relatives assumed care of the parents' three-year-old daughter, L.S., and obtained legal guardianship.

In October 2012, the court ordered Philip and Cecelia removed from parental custody. Christina was offered reunification services for 18 months in Philip's case and the parents were offered services for more than a year in Cecelia's case. In June 2013, Christina completed the Parent Care program, which included parenting classes and drug testing. Roberto completed Bridges, a substance abuse program, but did not complete therapy. The parents did not address the issues of drug abuse, mental health and housing stability and failed to reunify. In March 2014, the court terminated parental rights in Cecelia's case.[3] In October, the court instituted a permanent plan of legal guardianship for Philip.

---

[3]    Cecelia's adoption was finalized in May 2015.

A.C.'S DEPENDENCY CASE

In May 2014, A.C. was born. On April 10, 2015, a police officer found Christina stopped on the side of the road with A.C. in her vehicle. Christina admitted having methamphetamine in the car. She appeared "to be borderline under the influence of a controlled substance." She was arrested for using and possessing methamphetamine and child endangerment. Christina was taken to jail and the maternal grandmother picked up A.C. On April 11, Christina was released from jail. On April 12 and 13, the Agency searched unsuccessfully for A.C. On April 15, the Agency found A.C. in Roberto's care and Roberto agreed to a safety plan. On April 16, Christina agreed to a safety plan. Both safety plans included drug testing. On April 20, the Agency received the results of the parents' drug tests; the tests were positive for methamphetamine.

On April 21, 2015, the court issued a protective custody warrant for A.C. and the Agency filed a dependency petition. The petition alleged as follows. The parents used methamphetamine to excess and continued to abuse methamphetamine despite safety planning. On April 10, Christina drove while under the influence of methamphetamine with A.C. as a passenger. On April 20, the parents tested positive for methamphetamine. They had lengthy drug use and child welfare histories.

At the April 22, 2015, detention hearing, the court ordered that the parents be provided voluntary services. A.C. was detained in a foster home, then with the maternal grandfather. In May, in the jurisdictional and dispositional report, the Agency recommended that the parents be denied reunification services pursuant to section 361.5, subdivision (b)(10) and (11) because they had failed to reunify after Cecelia's removal,

4

their parental rights to Cecelia had been terminated and Christina had failed to reunify with Philip after his removal.[4]  In June, at the jurisdictional and dispositional hearing, the court made true findings on the petition and ordered that A.C. be placed in the home of a relative.  The court denied the parents reunification services and set a section 366.26 hearing.

The parents petitioned for review of the court's orders.  (§ 366.26, subd. (*l*); Cal. Rules of Court, rule 8.452.)  This court issued an order to show cause, the Agency responded and the parties waived oral argument.

## DISCUSSION

"Reunification services need not be provided to a parent . . . when the court finds, by clear and convincing evidence" (§ 361.5, subd. (b)) that the court terminated reunification services for a sibling or half sibling because the parent failed to reunify after the sibling's or half sibling's removal (*Id*., subd. (b)(10)), or the parent's rights over a sibling or half sibling were terminated (*Id*., subd. (b)(11)) and, in either situation, the parent "has not subsequently made a reasonable effort to treat the problems that led to removal of the sibling or half sibling . . . ."  (*Id*., subd. (b)(10) & (11).)  If section 361.5, subdivision (b)(10) or (11) applies, "[t]he court shall not order reunification [services] unless the court finds, by clear and convincing evidence, that reunification is in the best interest of the child."  (*Id*., subd. (c).)  "The 'reasonable effort to treat' standard 'is not synonymous with "cure." ' [Citation.]  The statute provides a 'parent who has worked

---

[4]     The jurisdictional and dispositional report also stated that Christina's parental rights to Philip had been terminated.

5

toward correcting his or her problems an opportunity to have that fact taken into consideration in subsequent proceedings.' [Citation.] To be reasonable, the parent's efforts must be more than 'lackadaisical or half-hearted.' " (*K.C. v. Superior Court* (2010) 182 Cal.App.4th 1388, 1393.) We review the court's findings for substantial evidence. (See *A.A. v. Superior Court* (2012) 209 Cal.App.4th 237, 242.)

The parents contend the court erred by failing to make an express finding that they had not made reasonable efforts to treat the problems that led to the removal of Cecelia (and, in Christina's case, Philip) and substantial evidence does not support an implied finding. Christina also contends the court erred by basing the denial of services on the premise that offering services would be fruitless and abused its discretion by not finding that services would have been in A.C.'s best interests.[5] These contentions lack merit.

By age 13, Christina had begun drinking alcohol.[6] By age 16, she had received a diagnosis of depression. In high school, she "dabbled with weed." By age 18, she had begun using methamphetamine. Since then, she had alternated between periods of methamphetamine use and periods of sobriety. In April 2015, she said she had stopped taking her antidepressant medication and attending sober support meetings. She claimed she had been sober until about a week before her arrest that month. She denied knowing

---

[5]     Roberto concedes that substantial evidence supports the findings that he failed to reunify and had his parental rights terminated in Cecelia's case. Christina does not contest the findings that the court terminated reunification services for Cecelia and Philip because Christina had failed to reunify after removal and that Christina's rights over Cecelia were terminated.

[6]     Christina turned 13 in 1996.

6

that Roberto was using drugs.  Eventually, she admitted that she and Roberto used drugs together.  Roberto denied this.

Roberto began experimenting with methamphetamine when he was about 15 years old.[7]  He also smoked marijuana.  He completed drug treatment in 2013.  He claimed to have achieved sobriety for about one year when he was 18 years old and again for two years beginning in 2012.  He admitted relapsing in 2014.  He said he had been unaware of Christina's drug use until the police took A.C. into custody.

In May 2015, Christina reported that she had just started a 25-session parenting program at Parent Care, was attending Narcotics Anonymous meetings and had "had one appointment with [a] therapist to get medication going."  Roberto reported he was attending a substance abuse program that would include parenting classes "and [said he] needs to attend [Alcoholics Anonymous/Narcotics Anonymous] classes."

By June 2015, Roberto had begun attending Alcoholics Anonymous/Narcotics Anonymous classes.  He was working on the second step of a 12-step program and had a sponsor.  His attendance at the Bridges substance abuse program was perfect, and he was doing everything expected of him.  Since April, Roberto's drug tests had been clean.  He had begun therapy, had attended one appointment and had started a parenting course.  He visited and interacted positively with A.C.

By June 2015, Christina had attended only the minimum number of full days required at Parent Care, thus missing parenting instruction that would have benefited her

---

7       Roberto turned 15 in 1996.

and A.C. When Christina did attend, she participated in sessions and did well. As of June 8, she had had a sponsor for approximately two weeks. Christina was attending Narcotics Anonymous meetings and had completed her first step. Since the inception of this case, all of her drug tests had been clean. Christina visited A.C. regularly and they were bonded.

The parents had long histories of methamphetamine use, about 19 years for Roberto and about 14 years for Christina. The parents had been involved with the Agency since 2012 but participated in treatment only when the Agency intervened. "The 'failure to seek voluntary treatment could suffice to show resistance to treatment.' " (*In re Lana S.* (2012) 207 Cal.App.4th 94, 108 (*Lana S.*).)

The protective issues in the instant case (substance abuse and driving while under the influence with a child in the vehicle) were practically identical to the protective issues in past cases. The services the parents had begun in the instant case were the same as those they had received in the past. The parents had not succeeded in services they had been offered previously, including drug treatment and parenting classes, and had a history of inconsistent visitation, including failing to visit for months at a time. They had not applied the skills taught in their earlier programs and had not learned to keep A.C. safe.

Previously, Christina had completed substance abuse programs, drug court and parenting classes, and had attended therapy. During a previous case, she had failed to meet therapy goals, an important aspect of her case plan that could have helped her gain insight into how her actions endangered her children. In the past, Roberto had shown little to no inclination to cooperate with the Agency. Despite participating in substance

8

abuse programs, parenting classes and therapy, and experiencing periods of sobriety, the parents continued to use methamphetamine. They had not addressed, in any meaningful way, the substance abuse that had led to Philip's and Cecelia's removals and had not shown any insight into the danger their substance abuse presented for A.C., especially when she was in a vehicle with inebriated parents. The parents put their own needs before those of A.C., who was preverbal and needed constant supervision.

Christina argues that the sole basis for the denial of services was the court's finding that offering reunification services would be fruitless. That, indeed, is the bottom line. "The legislative intent [of section 361.5, subdivision (b)(10) and (11)] is to promote the interests of children, and conserve limited resources, by not ordering services when parents have demonstrated in prior proceedings that they would be fruitless." (*Lana S., supra,* 207 Cal.App.4th at p. 108.) The instant case is a clear example of one in which it would be fruitless to order services.

Although the court did not make an express finding that the parents had failed to make reasonable efforts to treat the problems that led to Cecelia's and Philip's removal, the facts summarized above constitute substantial evidence to support an implied finding to that effect. (*Lana S., supra,* 207 Cal.App.4th at pp. 107-108 [holding substantial evidence supported implied finding of no reasonable effort].) "We do not read the 'reasonable effort' language in the bypass provisions to mean that *any* effort by a parent, even if clearly genuine, to address the problems leading to removal will constitute a reasonable effort and as such render these provisions inapplicable. It is certainly appropriate for the juvenile court to consider the *duration*, *extent* and *context* of the

9

parent's efforts, as well as any other factors relating to the *quality and quantity* of those efforts, when evaluating the effort for reasonableness.  And while the degree of progress is not the *focus* of the inquiry, a parent's progress, or lack of progress, both in the short and long term, may be considered to the extent it bears on the *reasonableness* of the effort made.  [¶]  Simply stated, although success alone is not the sole measure of reasonableness, the *measure* of success achieved is properly considered a factor in the juvenile court's determination of whether an effort qualifies as reasonable." (*R.T. v. Superior Court* (2012) 202 Cal.App.4th 908, 914-915.)  Here, in the context of the parents' extensive history of drug abuse and child endangerment, their treatment efforts cannot be viewed as reasonable and are more properly classified as "half-hearted." (*Cheryl P. v. Superior Court* (2006) 139 Cal.App.4th 87, 99.)

Finally, Christina challenges the court's failure to find that services would have been in A.C.'s best interests.  Christina cites her "current efforts and fitness and . . . bond with" A.C. and A.C.'s stable relative placement.  There is no evidence in the record suggesting the court abused its discretion by failing to conclude that reunification services would have been in A.C.'s best interests within the meaning of section 361.5, subdivision (c). (*In re Angelique C.* (2003) 113 Cal.App.4th 509, 524.)

Substantial evidence supports the court's finding that section 361.5, subdivision (b)(10) and (11) applied and the court did not abuse its discretion by declining to order services.

DISPOSITION

The petitions are denied.  The requests for a stay are denied.


McCONNELL, P. J.

WE CONCUR:


BENKE, J.


O'ROURKE, J.