Filed 12/30/15  J.H. v. Superior Court CA1/5

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| J.H.,<br><br>        Petitioner,<br><br>v.<br><br>THE SUPERIOR COURT OF CONTRA COSTA COUNTY,<br><br>        Respondent;<br><br>CONTRA COSTA COUNTY CHILDREN AND FAMILY SERVICES BUREAU,<br><br>        Real Party in Interest. | A146373<br><br>(Contra Costa County<br>Super. Ct. Nos. J15-00630, J15-00631) |

Petitioner J.H. (Mother) seeks writ review (Cal. Rules of Court, rule 8.452)[1] of the decision of the juvenile court setting a hearing under Welfare and Institutions Code section 366.26,[2] following an order bypassing reunification services with her children, S.D. and S.H. (collectively, Minors), pursuant to section 361.5, subdivision (b)(13).[3]  We deny the petition.

---

[1] All further rule references are to the California Rules of Court.

[2] All undesignated section references are to the Welfare and Institutions Code.

[3] Section 361.5, subdivision (b)(13) provides reunification services may be bypassed where the juvenile court finds by clear and convincing evidence "[t]hat the parent or guardian of the child has a history of extensive, abusive, and chronic use of drugs or alcohol and has resisted prior court-ordered treatment for this problem during a three-year

1

BACKGROUND

In June 2015, the Contra Costa County Children and Family Services Bureau (Bureau) filed section 300 petitions on behalf of three-year-old S.D. and newborn S.H. The petitions alleged Mother "has a history of chronic poly-substance abuse that places [Minors] at risk of serious physical harm and neglect"; "engaged in substance abuse while pregnant" with S.D., resulting in his "being born with a positive toxicology for opiates and having to be treated for withdrawal symptoms with morphine"; and, with respect to S.D., "is unable to care for the child and has expressed her desire to give the child up for adoption." In July, the juvenile court sustained the petitions' allegations.[4]

A contested dispositional hearing was held in September. The following evidence appears in the Bureau's detention/jurisdiction and disposition reports, the social worker's testimony, and records of a criminal case which the juvenile court took judicial notice of. At birth S.H. weighed only three pounds ten ounces, tested positive for opiates, and was put on morphine for withdrawal. Mother stated she did not want to see the baby or bond with him, and planned to give him up for adoption.[5]

Mother admitted to using opiates for at least seven years. She claimed her use was because of health problems including arthritis and fibromyalgia. She initially reported she "buys Vicodin on the street." Mother later told the Bureau she has prescriptions but never provided documentation to the Bureau.

---

period immediately prior to the filing of the petition that brought that child to the court's attention, or has failed or refused to comply with a program of drug or alcohol treatment described in the case plan required by Section 358.1 on at least two prior occasions, even though the programs identified were available and accessible."

[4] Procedural history relating to Minors' alleged fathers and a half-sibling is omitted except where relevant to this writ proceeding.

[5] At the hearing, however, Mother's counsel represented that Mother did want to reunify with S.H.

In 2006, the Bureau filed dependency petitions regarding Minors' half-brothers because of concerns about Mother's poly-substance abuse, among other concerns.[6] During those proceedings, Mother completed an outpatient treatment program in September 2006, had several positive drug tests between November and January, and entered an inpatient program in February 2007 which she successfully completed in May. Mother had no positive tests between February 2007 and February 2008, when the dependency cases were vacated.[7] In 2011, S.D. was born and tested positive for opiates.[8] In 2012, Mother was convicted of possession of a controlled substance, heroin. Mother participated in drug diversion and was ordered to enroll in a drug treatment program. She enrolled in April 2014 and was still enrolled as of July 2014, with an expected exit date of October 2014. The record does not indicate whether she successfully completed the program.

The Bureau referred Mother to a two-year "dual diagnosis" treatment facility because Mother reported she has cognitive and learning disabilities. The Bureau also provided Mother with referrals to other treatment programs, testing, mental health services, and community resources, and provided tickets for public transportation. Mother told the Bureau she had made several calls to treatment programs, but at the time of the disposition hearing, she had not enrolled in a program.

S.D. has a significant speech delay, with her vocabulary limited to 10 to 15 words. She does not have "basic skills like basic colors, numbers, and sequencing." Her foster parent reported significant behavioral issues including regularly smearing feces on walls

---

[6] One of the half-brothers was born in 2000. Mother admitted that she used marijuana and alcohol during this pregnancy, and she tested positive for amphetamines at his birth.

[7] At the time the instant petitions were filed, all of Minors' half-siblings were under their respective fathers' care.

[8] The Bureau's social worker testified there was an indication in the file of a dependency referral made after S.D.'s birth that Mother was being treated by a medical clinic, although it was not clear exactly when or for what specific purpose. Contrary to Mother's suggestion, there was no evidence Mother was still being treated by this or any other medical clinic at the time of the instant petitions.

and on herself; eating out of a garbage can, even after a full meal; hiding food, money, and objects in her room; and tearing her clothing to shreds. She also displays overly sexualized behaviors.

Mother had regular and positive visits with S.D. The Bureau social worker testified Mother "clearly" cares for S.D. and "there's a very close attachment between them."

Both the Bureau and Minors' counsel argued reunification services should be bypassed under section 361.5, subdivision (b)(13). The juvenile court agreed, bypassed services, and set a section 366.26 hearing for January 14, 2016.

DISCUSSION

Mother first argues the order bypassing services is in error because the petitions do not allege that she resisted court-ordered treatment during the previous three years. Mother did not raise this argument in the trial court and has therefore forfeited it. (*In re Dakota H.* (2005) 132 Cal.App.4th 212, 221–222.) In addition, Mother fails to cite any legal authority for the proposition that all facts necessary to support bypass must be alleged in the dependency petition. (*Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 956 [" 'The absence of cogent legal argument or citation to authority allows this court to treat the contention as waived.' "]; cf. § 332, subd. (f) [dependency petition must contain "facts . . . to support the conclusion that the child upon whose behalf the petition is being brought is a person within the definition of each of the sections and subdivisions under which the proceedings are being instituted"]; § 361.5, subd. (b) [services may be bypassed "when the court finds, by clear and convincing evidence, any of the following" factual scenarios].)

Mother next argues the court's bypass finding was not supported by substantial evidence. Her primary argument appears to be that the Bureau contended her failure to be in treatment at the time of the disposition hearing constituted resistance to treatment, yet the Bureau failed to make reasonable efforts—in light of Mother's cognitive and learning disabilities—to help her enter treatment. This does not appear to accurately represent the Bureau's position below; in any event, we review the entire record—not just

4

the Bureau's arguments—to determine whether substantial evidence supports the juvenile court's finding. (*A.A. v. Superior Court* (2012) 209 Cal.App.4th 237, 242.) Mother admitted using opiates and S.H. required morphine for withdrawal from opiates at his birth. This constitutes substantial evidence of her resistance to treatment and is independent of the Bureau's efforts to help her enter treatment during these proceedings.[9] (*In re William B.* (2008) 163 Cal.App.4th 1220, 1230 ["resumption of drug use" following treatment (other than "a simple relapse") constitutes resistance to treatment for purposes of § 361.5, subd. (b)(13)].)

Finally, Mother points to the close attachment between her and S.D., but does not explain how this is relevant to the section 361.5, subdivision (b)(13) analysis. To the extent she is challenging the trial court's finding that reunification is not in S.D.'s best interest (§ 361.5, subd. (c)), we reject the challenge. S.D. exhibited significant speech delays and behavioral issues; Mother has a history of chronic substance abuse and resistance to treatment. The trial court's finding was not an abuse of discretion. (*In re William B., supra,* 163 Cal.App.4th at p. 1229.)

DISPOSITION

The writ petition is denied. The request for a stay of the January 14, 2016 hearing is denied. This decision is final as to this court immediately. (Rule 8.490(b)(2)(A).)

---

[9] In any event, the Bureau made reasonable efforts. The Bureau social worker testified Mother was initially not receptive to treatment referrals. When Mother subsequently became more receptive, the social worker tried to discuss the necessary steps with Mother, but Mother "said she had to leave and she already had all the information she needed and she ended up leaving before [the social worker could] give her a lot of detail about it." Mother does not identify any additional efforts the Bureau could have made which were likely to result in her entering treatment. The cases cited by Mother are inapposite. (See *In re Elizabeth R.* (1995) 35 Cal.App.4th 1774, 1778, 1791–1792 [agency must make reasonable efforts to facilitate visitation when bipolar parent was hospitalized due to mental illness]; *In re Victoria M.* (1989) 207 Cal.App.3d 1317, 1323–1324, 1327–1329 [agency failed to consider parent's developmental disability in creating reunification plan which, despite parent's efforts to comply, did not help her overcome the problems leading to the loss of custody].)

5

_____

SIMONS, J.

We concur.

_____

JONES, P.J.

_____

BRUINIERS, J.

(A146373)